Argued November 15, 1977, affirmed January 16, 1978

STATE OF OREGON, *Appellant,*
*v.*
ROBERT BURCH TURNER, *Respondent.*
(No. 77-0020, CA 8642)
573 P2d 326

Robert C. Gorham, Assistant District Attorney, and David M. Nissman, Certified Law Student, Eugene, argued the cause for appellant. On the brief were J. Pat Horton, District Attorney, Charles J. Wiseman, Assistant District Attorney, and Peter H. Wells, Assistant District Attorney, Eugene.

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

TANZER, J.

[ 61 ]

**TANZER, J.**

The state appeals an order of the circuit court suppressing evidence of two separate statements made by defendant to police while he was incarcerated in the Lane County Jail.[1]

On December 24, 1976, defendant was arrested and charged with murder. At that time, he was advised of his Miranda rights[2] and, before being asked whether he understood those rights, he requested the assistance of counsel. Three days later, defendant was arraigned and counsel was appointed.

After arraignment, and before defendant was able to speak with his newly appointed attorney, a police officer visited defendant in jail. Defendant was again advised of his Miranda rights. The police officer indicated that he knew defendant was suffering from heroin withdrawal and he said that he would do what he could to get treatment for defendant's addiction and to help defendant's family with problems which they faced. No threats or other promises were made. After some discussion about why two alleged accessories to the homicide had not yet been arrested, defendant confessed. Thereafter, defendant conferred with his appointed counsel.

On January 11, 1977, defendant requested to speak with a named police officer regarding the disposition of some of his personal property. The officer visited defendant with a tape recorder. Defendant again asked why the alleged accomplices had not been arrested and he was informed that without more information, the other parties would not be charged. The officer then attempted to give defendant a Miranda warning but defendant said that he would not talk

---

[1]The state's appeal is pursuant to ORS 138.060(3). The circuit court made detailed oral findings of fact relative to its suppression order. Those findings are supported by evidence in the record and we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The facts recited in this opinion are distilled from the circuit court's findings.

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[ 63 ]

if the warning was given. The officer agreed to proceed without advising defendant of his rights. Both the police officer and defendant believed that because defendant had not first been advised of his rights, the incriminating statement could not be used against him and their conversation was, as the trial court called it, an "implied agreement" to that effect. Defendant then repeated his prior incriminating story, placing greater emphasis on the role of the alleged accomplices. None of the conversation was recorded.

## The First Confession

■ The circuit court suppressed evidence of the December 27 confession on the ground that if a prisoner requests an attorney, all interrogation must cease until an attorney is present. *Miranda v. Arizona,* 384 US 436, 473-74, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The state contends that defendant reconsidered his request for counsel and waived his Sixth and Fourteenth Amendment rights. It argues that waiver is shown by defendant's election to make a voluntary statement after being readvised of constitutional rights which he understood and had previously asserted.

*Miranda* bars custodial interrogation once defendant has invoked, however inartfully, his right to silence or counsel. The rule is in the nature of prophylaxis and is absolute. *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977). As *Miranda* states:

> "* * * If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an

attorney is present. * * *" (Footnote omitted.) 384 US at 473-74.

The prohibition is on the police, not the prisoner. A prisoner who has invoked his rights is free to thereafter waive them. The police may ask the prisoner if he chooses to do so, *see State v. Whitewater,* 251 Or 304, 445 P2d 594 (1968); *State v. Rosenburger,* 242 Or 376, 409 P2d 684 (1966); *State v. Dyke,* 19 Or App 705, 709, 528 P2d 1073 (1974); *State v. Freeman,* 5 Or App 372, 484 P2d 867 (1971), but they may not attempt to induce him to do so, *State v. Garrison,* 16 Or App 588, 519 P2d 1295 *rev den* (1974); *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973). The "interrogation" which "must cease" is not confined to question and answer intercourse. *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977), makes clear that the concept of interrogation includes all police action which is designed to elicit statements from a defendant in custody, including acts of inducement or persuasion. Here, the offer to defendant of assistance for himself and his family was found to have been offered to induce him to make a statement and it was therefore an act of interrogation analogous to the so-called "Christian burial speech" in *Brewer v. Williams* and the threatful persuasion in *State v. Garrison.* Defendant's confession, as the product of that interrogation, was therefore properly suppressed as evidence.[3]

## *The Second Confession*

■ The circuit court was also correct in suppressing evidence of the January 11 confession since defendant's waiver of his right to remain silent was not knowing because he did not intend to relinquish his Fifth Amendment right and testify against himself. *Miranda* provides that a knowing waiver requires knowledge of the consequences of making a statement.

---

[3]It would be logical to analyze the police conduct as inducement to waive and defendant's statement as a tacit but involuntary waiver. The *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977), conceptualization, however, is otherwise and we follow it.

Because we cannot expect all defendants to be lawyers, nor all policemen to be law professors, we cannot expect a defendant to know the consequences in their subtlety and entirety. Rather, *Miranda* requires understanding to the extent of knowing that a statement can be used in court against the declarant:

> "The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." 384 US at 469.

Both defendant and the interrogating police officer acted upon the express understanding that defendant's statements could not be used against him because they were not preceded by a Miranda warning. Thus, defendant's abandonment of the right to silence was not made with sufficient knowledge of its consequences and the waiver was ineffective.

Affirmed.