Argued May 16, resubmitted in banc November 28, affirmed in part,
reversed in part, remanded for new trial December 4, 1978,
petition for review denied February 21, 1979

STATE OF OREGON, *Respondent,*
*v.*
DAVID RUBIN RODRIGUEZ, *Appellant.*
(No. 77-01-00638, CA 9547)

587 P2d 487

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

JOSEPH, J.

## JOSEPH, J.

Defendant appeals his conviction by a jury on charges of burglary in the second degree (ORS 164.215) and harassment. ORS 166.065. He assigns as error the denial of a motion to suppress evidence obtained as a result of an allegedly unlawful stop and a motion to suppress statements he made during a colloquy with the arresting police officer after he had invoked his right to remain silent.

Defendant was stopped by a uniformed police officer who suspected that he had just committed a burglary.[1] Defendant immediately hit the officer in the head and ran. He was pursued and arrested. Under those circumstances, we need not determine the lawfulness of the initial stop under ORS 131.615 and *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). Evidence relevant to proof of an independent crime directed at a police officer after an illegal stop is not within the exclusionary rule. *State v. Gaffney,* 36 Or App 105, 583 P2d 582 (1978). The evidence on which the harassment charge was based was properly admitted.

When defendant was arrested, he was read his *Miranda* rights and placed in the officer's patrol car. In coarse but clear terms he invoked his right to remain silent. At no time did he request an attorney. The officer attempted several times to obtain from him his name, address and date of birth, but defendant vehemently refused to answer any questions. When they arrived at the booking facility, approximately three hours after the arrest, the officer again asked defendant for his name and address, which were

---

[1] The officer was responding to an early morning radio report that a silent alarm had just gone off in a bookstore. The officer parked almost two blocks away, and as he walked toward the bookstore he saw several persons leaving a nearby cafe, which was about to close. On the sidewalk across from the bookstore he encountered defendant, who was walking away from the store and approximately in the direction of the cafe. There were also bus stops in that direction. It was a cold winter night, but defendant was wearing no jacket or sweater. He did, however, have on one glove.

needed to fill out a "custody report." Defendant did not answer. The officer told him that he would not be released until the report had been completed, but that if he did give the necessary information he would be released on bail or on his own recognizance. Defendant then gave his name and address. When the officer started to ask for physical characteristics, such as height, defendant remarked: "You guys don't have a case anyway." The officer replied, "I think you're wrong" and proceeded to itemize all the evidence which he felt pointed to defendant as the burglar. He mentioned in particular that possible fingerprints[2] had been found at the point of entry, but he did not mention that the burglar had entered through a bathroom window.

At the hearing on the motion the officer summarized what occurred next:

"I said, 'Hey, if your prints are in there, that's it, it's all over as far as I'm personally concerned,' and he said, 'Maybe I was in there before,' and I said, 'Well, maybe you were, maybe you were there yesterday.' I think I made a comment, 'Well, you know, the fingerprints could be overladen,' and something, and if the fingerprints were fresh, and that means he was there yesterday, and he said, 'Maybe I was there yesterday,' and he said 'I went to the bathroom,' or he said 'Maybe I went to the bathroom.' And I said, 'Why?' "

Defendant argues that by inducing him to discuss the evidence after he had clearly expressed his desire to remain silent, the officer violated his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The principal relevant portions of the *Miranda* opinion are:

"* * * If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the

---

[2] A handprint was found, but it proved to be unidentifiable.

product of compulsion, subtle or otherwise. * * *" 384 US at 473-74.

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 US at 475. (Citations omitted.)

In *Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975), the court observed that

> "[a] reasonable and faithful interpretation of the Miranda opinion must rest on the intention of the Court in that case to adopt 'fully effective means * * * to notify the person of his right to silence and to assure that the exercise of the right will be scrupulously honored.' " 423 US at 103. (Citations omitted.)

■ Although defendant was in custody and had clearly and repeatedly expressed his intention to remain silent, the officer was not prohibited from asking defendant for his name, address and other such routine identifying information necessary for booking. Simple requests of that kind are not considered "interrogation." *State v. Whitlow,* 13 Or App 607, 510 P2d 1354 (1973).

■■ Defendant's comment, "You guys don't have a case anyway," indubitably was volunteered and so was admissible. *See State v. Austin,* 1 Or App 556, 465 P2d 256 (1970). By initiating a conversation after he has invoked his right to remain silent, a suspect may indicate a knowing and voluntary waiver of that right. *State v. Rollwage,* 21 Or App 48, 533 P2d 831 (1975). In this case the trial judge said:

> "* * * I think the other statement was invited by the defendant, and I think the colloquy is admissible. He was advised. No one asked him [*i.e.,* the arresting officer] what the Miranda rights were; I assume those were the standard rights of advice, and there's no question that those were given, but I think that portion of the colloquy is admissible. * * *"

A fair paraphrase of that ruling in logical order would be:

The defendant received proper *Miranda* warnings and understood them. He voluntarily made a statement to the police officer which invited and elicited the officer's statements about "the case" against the defendant. The defendant's responses to the officer in turn demonstrated a knowing and voluntary relinquishment of the right to remain silent. Those responses were therefore admissible.

Under *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968) "[w]hat actually transpired is a question of fact for the trial court or jury." No one had or could have any doubt about who said what and to whom, and no one could fairly doubt that the statement "You guys don't have a case anyway" was in all respects voluntary *in fact.* Similarly, the trial court's finding that the statement invited and got a response from the officer does not require us even to try to separate what was "fact" and what was "conclusion," because that matter in this instance is of no legal significance.

The officer did say what he said, and that is a historical fact. The defendant did say what he said, and that is a historical fact. We are bound by all of that. Under *Ball* and *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), though, we are not bound by the trial court's deduction that those facts prove that due process was satisfied. We conclude that due process was not satisfied.

■■ Defendant's stimulating remark to the officer was an irrelevant response to the officer's proper questions seeking routine identifying information; in context it seems to have amounted to the defendant's way of saying that even identifying information was being given only reluctantly. While the comment did "invite" some sort of response, it was not a justification for the officer to detail the evidence (and the possible evidence) against defendant and to comment on it as he did. The officer should have known, even if he did not think of it in the irritation of the moment, that his comments were likely to result in responsive statements by the defendant. A reference to incriminating

evidence to see if the suspect will attempt to explain it away is the substantial equivalent of a direct question and is just as objectionable. *See Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977).

Although it did not clearly indicate a knowing and voluntary waiver of his right to remain silent concerning matters other than the booking information, defendant's initial comment could fairly be said to have raised a question whether he desired to discuss the case. To resolve that question the officer could have asked defendant straightforwardly if he had changed his mind and wished to discuss the case. *State v. Dyke,* 19 Or App 705, 528 P2d 1073 (1974); *see also Nash v. Estelle,* 560 F2d 652 (5th Cir 1977). He did not do so. Under the circumstances we conclude that defendant's right to remain silent was not "scrupulously honored."

Short of an outright confession, it is difficult to imagine statements which would have been more prejudicial than defendant's statements, "Maybe I was in there before," "Maybe I was in there yesterday," and "Maybe I went to the bathroom." It does not matter that the statements were ostensibly exculpatory. *Miranda v. Arizona, supra,* 384 US at 477.[3] The other evidence against defendant was not overwhelming. The failure to suppress the statements made by defendant in response to the officer's comments concerning the evidence requires reversal of the burglary conviction.

The harassment conviction is affirmed. Or Const, Art VII, § 3; ORS 138.230; *State v. Wilson,* 34 Or App 429, 578 P2d 822 (1978).

Affirmed in part; reversed in part and remanded for a new trial.

---

[3] In *Miranda* the court noted that

"* * * no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. * * *" 384 US at 477.

**SCHWAB, C. J.** dissenting in part.

I agree that the defendant initially invoked his right to remain silent, but that this did not prohibit the officer from continuing to seek routine information such as name, address, height, weight, etc. I agree that defendant's "You don't have a case" comment was volunteered and admissible. I disagree with the majority's conclusion that the officer's responsive comments to the defendant were coercive.

When a suspect is in custody, it is possible for an officer's comments, though not taking the form of questions, to be a subtly coercive quest for incriminating information. *See Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977); *State v. Turner,* 32 Or App 61, 573 P2d 326 (1978). In *Brewer* the police made an emotional appeal about a "Christian burial" for a murder victim. In *Turner* the police suggested the possibility of aid for the prisoner in obtaining treatment for heroin addiction and aid for his family.

The officer in this case did nothing similar. He simply responded to the defendant's volunteered comment "You don't have a case" by itemizing the evidence he felt was available to the state. There was no implied question mark at the end of the officer's statements. Moreover, I do not think the officer's comments were intended to coerce incriminating responses from the defendant. My estimate of the situation is that the officer rather than the defendant was the one "coerced" into responding.

In sum, we agree on the applicable rule: *Brewer* and *Turner* prohibit clandestine interrogation under the guise of casual conversation. But I disagree that anything even approaching clandestine interrogation occurred in this case. The comments of the officer were a natural response to a statement by defendant; they were told, not asked; they were of short duration; and they have no appearance of having been intended as an evidence-gathering mission.

[ 362 ]

I would affirm the burglary conviction.

Thornton, Lee and Tanzer, Judges, join in this dissent.