Argued November 21, 1978, reversed and remanded for new trial
February 20, petition for review denied April 17, 1979

STATE OF OREGON, *Respondent,*
*v.*
SHAWN ROBERT McGREW, *Appellant.*
(No. C 77-08-11378, CA 10780)

590 P2d 755

Richard M. Rogers, Portland, argued the cause for appellant. With him on the briefs were Gary D. Babcock, Public Defender, and James E. Mountain, Jr., Deputy Public Defender, Salem.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction for murder, ORS 163.115, claiming the court erred in denying a motion to suppress his confession and denying a motion for a new trial on the ground his confession was not admissible. Both claims of error raise the same issue.

There was very little conflict in the evidence presented at the hearing on defendant's motion to suppress his confession. We take the facts from this hearing record.

On June 27, 1977, the body of a murdered woman was found on the grounds of a synagogue in Portland. Subsequently Mike Nielsen, a friend of defendant, heard that defendant believed he committed the murder. Nielsen contacted defendant and was told by defendant that he wished to turn himself in. Nielsen accompanied defendant to the police station. Enroute, Nielsen told defendant that he did not have to say anything when they got to the police station and that defendant could wait until he talked to an attorney.

When they arrived at the police station, Nielsen asked the receptionist if she was familiar with the murder and said defendant told him that he was the one who did it. The defendant said nothing. The receptionist testified she thought the defendant was under the influence or drunk.

Approximately five minutes later an officer entered and was told by Nielsen that defendant believed himself to be guilty of murder. Defendant gave an affirmative response when the officer asked him if that were true. The officer then took defendant and Nielsen to an interview room where defendant was read his *Miranda* rights.[1] Defendant indicated he understood these rights and answered questions regarding his name, address and date of birth. Defendant was 17 years old but was functioning at an

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

intellectual-educational level of a 12 or 14 year old child. Defendant was then informed he was a suspect. He was handcuffed and taken to the Detective Bureau in the same building.

Defendant was then placed in a small custody room where the handcuffs were removed. Detective Kagey, who had been assigned to the homicide case, entered and Nielsen told Kagey that he had advised defendant not to make any statements until defendant had an opportunity to speak with counsel. Defendant was seated next to Nielsen but remained silent. Kagey asked defendant his name, age and address and then directed his conversation to Nielsen. Kagey asked him to step into the hallway, where outside defendant's presence Kagey told Nielsen that defendant would have to convince him that defendant was involved in the murder before he could arrest defendant. They reentered the room, and Nielsen again advised defendant not to speak without an attorney.

Kagey then took defendant and Nielsen to a larger room to wait for Kagey's partner, Detective Blodgett. Defendant told Kagey that he was an alcoholic, had been hospitalized for treatment and desired more help. Kagey then told defendant that "if in fact he was responsible for this [murder] and if he did commit this act that he should become involved in the [court] system [because] [t]hat's the only way I could get him any help."

Kagey and Nielsen again went out into the hallway away from defendant, and Nielsen again requested an attorney for defendant. This time Kagey told Nielsen that they could get an attorney but "if you [Nielsen] are personally convinced that he committed this crime and if you are sure he's responsible for this and an attorney tells Shawn not to say a word, then Shawn goes out the door; we don't have a case against Shawn McGrew." Nielsen then requested to speak to defendant alone, and Kagey agreed. Nielsen told defendant that Kagey had told him "if he thought he did

something wrong that he should just come clean with it." Nielsen then informed Kagey that defendant had decided to give a statement to the officers.

About this time Detective Blodgett arrived with a tape recorder. Nielsen was told to leave. The officers then advised defendant of his *Miranda* rights and obtained a signed waiver. Defendant's subsequent statements were incriminating. His motion to suppress was denied after hearing, and the statements were introduced at trial.

Defendant bases his appeal on alleged violations of the Fifth Amendment guarantee against self-incrimination as well as the Sixth Amendment right to counsel, as defined in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). In denying the defendant's motion to suppress, the trial court concluded the only conflict in the evidence was whether defendant had orally asserted his right to remain silent. Nielsen testified the defendant had said he did not want to talk, while the police detectives testified he did not. The court found that defendant probably did not assert the right to remain silent, but if he did he subsequently waived it. The court also held that the right to have counsel present is a personal right which must be asserted by the defendant and Nielsen's several requests for counsel for defendant were not sufficient to invoke the strictures imposed by *Miranda* on police interrogation. We reverse.

■ The brief and arguments of the parties center predominantly on the issue of whether Nielsen could assert a right to counsel on behalf of defendant. The issue cannot be reduced to an inquiry of whether defendant asserted his right to remain silent or to have an attorney present. Those rights exist whether or not a defendant asserts them, and the police may not question a defendant until these rights are waived. We need not decide if defendant asserted, through

Nielsen, the right to counsel, for we conclude the waiver obtained by the police was not valid.

█ Concerning waiver of rights, the Supreme Court in *Miranda* said:

"* * * But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. * * *

"* * * * *

"Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. * * *" 384 US at 475-76.

The prosecution has the burden of demonstrating a knowing, intelligent and voluntary waiver before any statement will be admissible. *Miranda v. Arizona, supra.* That burden includes a requirement that the prosecution show the waiver was not induced by the police. Once an accused has been advised of his rights the waiver, which must precede interrogation, must not be induced by the law enforcement agents. It must be a free will choice of the accused. The police may ask the defendant if he will waive his right to silence, but they may not persuade him to do so. *State v. Johnson,* 37 Or App 209, 586 P2d 811 (1978); *State v. Turner,* 32 Or App 61, 573 P2d 326 (1978); *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978); *State v. Dyke,* 19 Or App 705, 528 P2d 1073 (1974); *State v. Garrison,* 16 Or App 588, 519 P2d 1295, *rev den* (1974); *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973). Each of these cases just cited involved, *inter alia,* a question of waiver after the defendant had requested counsel. This is not a material factor distinguishing the issue of waiver in the case at bar. The waiver, at whatever juncture it occurs, must satisfy the requirement that it be voluntary. The right to counsel and the right to remain silent existed whether or not the defendant verbalized his intent to assert these rights, and the requirement that these rights be

waived prior to interrogation does not evaporate if defendant does not assert them.

■   The issue is the voluntariness of the waiver at the time it was given. The events preceding the waiver reflect on voluntariness as does the character, personality and condition of the defendant. Defendant was 17 years old with the mental acuity of a 12 or 14 year old child. He had alcohol problems severe enough to require hospitalization on at least two occasions. He was obviously relying on his friend Nielsen for guidance and was separated from Nielsen at the time the waiver card was signed and the incriminating statements made.

Prior to the waiver, the detective, in response to defendant's request for help with his alcohol problem, told defendant unless he told the police about his involvement in the murder they could not get him involved in the court system where he could get help. This offer of assistance, conditioned upon the defendant confessing to the crime, was obviously designed to induce defendant to give up the right to remain silent. *See State v. Turner, supra.*

In addition, again prior to obtaining the waiver, the detective told Nielsen "if you [Nielsen] are personally convinced that he committed this crime and if you are sure that he's responsible for this and an attorney tells Shawn not to say a word, then Shawn goes out the door * * *." This message was communicated to defendant by Nielsen, who told defendant the detective had said "if he thought he did something wrong that he should just come clean with it." Although the statement was made to Nielsen and not the defendant, the police were aware of defendant's reliance on Nielsen and that the message would be communicated to the defendant. Again, the obvious intent of the message was to induce defendant to give up the right to remain silent.

■   The trial court found, based on the evidence, that defendant had waived his right to remain silent. As indicated, the evidence surrounding the waiver was

not disputed. Although the court concluded there was a proper waiver that was a legal conclusion based on settled facts and we are not bound to accept it. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *State v. Johnson, supra; State v. Garrison, supra.* We conclude the state has failed to demonstrate the waiver was voluntary and not merely a response to the detective's inducement.

Reversed and remanded for new trial.