Argued April 26, affirmed June 18, reconsideration denied August 14, 1979

## STATE OF OREGON, *Respondent,*
### *v.*
## DELL KENNETH FOSTER, JR., *Appellant.*
### (No. C-78-04-05813, CA 11775)

596 P2d 572

David L. Slader, Portland, argued the cause and filed the brief for appellant.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals his conviction for kidnapping, assigning as error the denial in part of his motion to suppress evidence.

Defendant was arrested in his home at 11:15 p.m. He was promptly advised of his rights and informed of the charge. Defendant denied involvement in any kidnapping and consented to a search of his home which was fruitless. He was taken to the police station and was not questioned in the police car.

At the detective office, defendant was questioned intermittently from 12 a.m. until 3:30 or 4 a.m. At the beginning, defendant declined to discuss the matter without having an attorney present. He asked for an attorney three or four times during the course of the questioning. The questioning continued nevertheless. The police attempted to persuade him to discuss the crime by suggesting that his prospects were better if he cooperated and bleak if he did not. Defendant mentioned his reluctance to incriminate his brother and denied having seen the $100,000 ransom. He made no other statement indicating knowledge of the crime.

At about 3 a.m., defendant asked a detective when he would be searched. The detective asked defendant what he meant by the question and the defendant repeated it. Defendant had already been searched for weapons and the detective answered that he expected defendant to be searched more thoroughly when he got to jail at which time he would be required to empty his pockets. Defendant then asked if he could go to the bathroom, indicating that he would talk to the police when he returned. Alerted by defendant's question about a search, the detective observed him closely. He then noticed a portion of a matchbook sticking out between defendant's shoe and sock. The detective took it and noticed that it was marked with a telephone number. Defendant admitted that the number was his brother's and said nothing more to the police that

night. From the telephone number, the police ultimately determined defendant's brother's whereabouts.

Defendant was booked and jailed, but not arraigned. At 10:45 a.m. another detective spoke to defendant. He told defendant at the outset that he knew defendant had requested counsel the night before, that defendant was not required to speak to him, that he would advise him again of his rights, but that defendant could waive his right to have an attorney there, and that he wanted to inform defendant of freshly developed evidence for defendant to take into account in determining whether or not to speak to the police. The additional evidence was that the defendant's brother was arrested in Seattle and had implicated defendant in the kidnapping and the receipt of the ransom money. The detective further stated that he felt the evidence to be very strong, that there was a good chance defendant would be convicted and that he felt it would be to the defendant's benefit to cooperate in the effort to recover the ransom. He then advised the defendant of his *Miranda* rights. As they discussed the situation, the detective told defendant that if he had an attorney, he was sure the attorney would advise defendant not to discuss the matter.

Defendant then agreed to talk. He asked about the truthfulness of the statements about his brother. The detective then obtained defendant's agreement to have another person witness the detective's statement to defendant. The only person the detective could find was a lawyer nearby on other business. The lawyer came in, the detective repeated his statements about defendant's brother, and the lawyer told defendant that he needed an attorney. After the lawyer left, the defendant agreed to waive his right to have an attorney present and made a statement.

The trial court granted the motion to suppress as it related to statements of defendant during the first questioning from midnight to 4 a.m. It denied the

motion to suppress the matchbook and evidence gained from the matchbook. It also denied suppression of the statements made during the questioning the following morning.

Defendant contends that the matchbook and its consequential evidence must be suppressed because its discovery was the result of unlawful questioning. The simple answer is that the discovery of the matchbook was not the result of questioning. It was the result of direct visual observation of the defendant. Although the discovery of physical evidence was related to the questioning in time and place, there is no causal connection. Suppression of the matchbook was properly denied.

■ Denial of suppression of statements made during the second questioning was also correct. It is well established that the decision of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), requires that the police must respect a request for counsel by terminating custodial questioning, *State v. Garrison,* 16 Or App 588, 519 P2d 1295 (1976), that they may not override the request by persuasive inducement of a waiver, *State v. Suggs,* 13 Or App 484, 511 P2d 805 (1973), that defendant may thereafter change his mind, *State v. Whitewater,* 251 Or 304, 445 P2d 594 (1968), and that the police may later ask if he has changed his mind, *State v. Dyke,* 19 Or App 705, 528 P2d 1073 (1974), but they may not persuade him to talk in the absence of a waiver, *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977). The trial court concluded that defendant had changed his mind and made an intelligent voluntary waiver of his rights to silence and counsel. Two of defendant's challenges to that conclusion are substantial: (1) that the waiver is tainted by the earlier unlawful questioning, and (2) the waiver was induced by improper persuasion in the form of information regarding defendant's brother's statements.

[639]

## I. Taint

The preliminary inquiry regarding the voluntariness of a statement which follows an improperly obtained statement is whether it is in any substantial degree the result of the earlier one. Most commonly, causation may be analyzed in terms of time and place, see *State v. Paz*, 31 Or App 851, 871-72, 572 P2d 1036 (1977), but the constitutional determination in this case must involve more than judicial measuring and counting. Here, the place was the same, but the questioner was different and enough time had passed to separate the two questionings into two distinct episodes. The second questioning was preceded by a fresh advice of rights, a reminder of defendant's prior invocation of the right to counsel and the clear statement that he was still able to have counsel if he so desired. The detective made clear that he would respect the defendant's rights to silence and counsel. There is no suggestion that defendant was overborne in any way. Neither does the record suggest that defendant was influenced by the content of any admissions made during the preceding interrogation because no substantial admissions had been made, *i.e.,* the cat may have been peeking but it was not yet out of the bag. Given the totality of these circumstances, we conclude that the trial court correctly ruled that defendant's statements were not the result of—and hence not tainted by—the earlier interrogation.

## II. Persuasion

During the second questioning the detective informed defendant, prior to defendant's waiver, that his brother had confessed and had implicated defendant and that cooperation by defendant would probably inure to his benefit. These statements were obviously made with the purpose of persuading defendant to waive his rights and to talk. The issue is whether any persuasion is permissible and, if so, whether this persuasion was within the range of permissibility.

[640]

Two United States Supreme Court cases bracket this case. In an opinion long on facts and short on doctrine, *Brewer v. Williams,* an emotional appeal to defendant's conscience (the so-called Christian Burial Speech) after defendant had asserted his right to counsel was deemed impermissible interrogation. *See also State v. Turner,* 32 Or App 61, 573 P2d 326 (1978). In *Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975), a few hours after defendant terminated the first interrogation by asserting his rights, he was readvised, he denied everything, and he was told that his partner had confessed, implicating defendant as the gunman. Defendant then confessed. The court upheld the confession, holding the second interrogation permissible. There was no discussion of the inducement but, because the statement was admitted, we must infer that the Supreme Court saw no problem of any substantial magnitude.

This case most resembles *Michigan v. Mosley* and the result should be the same. That case recognizes implicitly that *Miranda* does not require that the police advise the prisoner and then wait passively for the prisoner to spontaneously waive his rights. There has ever been and remains an interaction between police and prisoner and it would be unrealistic to expect otherwise. It is clear from the thousands of cases which we review that art has not disappeared from detective work. Rather the objective of the art of interrogation has shifted from the decision to talk to the decision to waive rights. The line of permissible police participation in the waiver process falls somewhere between asking the prisoner if he wishes to waive and inducing him to do so.

In an attempt to even somewhat the peculiar balance of power involved in custodial interrogation—the police have both cunning and psychological edge; the prisoner has both knowledge and will—*Miranda* interposes the requirement that any interrogation be preceded by a knowing and voluntary waiver of rights. A recital of evidence, with no attempt to overbear, goes

[641]

to the deliberateness with which a prisoner makes his decision. *Michigan v. Mosley* compels the conclusion that a recital of evidence is on the permissible side of the constitutional line. The same may be said of the statement that cooperation in recovery of the ransom would probably be looked on favorably.

■ Our opinion in *State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978), is distinguishable on its facts. There, the majority held, the evidence was recounted shortly after defendant had asserted his rights in an apparent effort to persuade him to rescind that assertion. The majority cited language from *Michigan v. Mosley* but did not deal with the facts. Here, the information was not offered to overcome defendant's assertion of rights but, rather, to be considered by him in deciding whether to reassert or waive those rights. Therefore, we uphold the trial court's finding of a voluntary waiver.