Argued and submitted August 28, reversed and
remanded for new trial December 10, 1979

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN GUY PELLETIER,
*Appellant.*

## (No. 53525, CA 13946)

603 P2d 1247

Douglas W. Moore, Albany, argued the cause for appellant. With him on the brief was Coady & Moore, Albany.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

Thornton, J., dissenting opinion.

## CAMPBELL, J.

Defendant appeals from a conviction after jury trial of unauthorized use of a vehicle, ORS 164.135, and burglary in the first degree, ORS 164.225. He argues that the trial court erred in (1) overruling his motion to exclude testimony concerning statements made to police after he invoked his right to remain silent; (2) admitting items, including those found in a large zippered wallet, seized without a warrant from the vehicle several hours after defendant's arrest; and (3) prosecuting defendant as an adult.[1] We reverse and remand for new trial.

At the pretrial suppression hearing, Trooper Bernard testified that he initially contacted defendant on Interstate 5 north of Albany. Defendant, who was on foot, informed the trooper that his car had run out of gas. The trooper drove him south approximately four miles to a vehicle, and immediately was dispatched to another location. When he returned, defendant was still there. While the trooper was in the process of transferring gas from the patrol car into the other vehicle, he made a radio check on the ownership of the vehicle, which revealed that it had been reported stolen. Trooper Bernard then told defendant that the car had been reported stolen and that he was under arrest. Defendant was handcuffed at this time. The trooper advised defendant of his *Miranda*[2] rights, and asked whether he understood those rights, to which defendant nodded his head and said, "Yes." When asked if he wished to talk about the matter, defendant replied, "No." Five or ten minutes later, the trooper asked defendant if the name he had previously given, "Salaheddine Ali Darrat," was his true name. Defendant said that was his real name. Later, however, defendant stated that his name was "Billy Blake." Trooper Bernard then asked defendant why he took

---

[1] Because of our resolution of this case, we do not reach defendant's third assignment of error.

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

the car. Defendant replied that he was tired of hitch-hiking and that he had gotten the car in Salem. The trooper asked no further questions and took defendant to the Linn County jail.

Bernard then went to a service station near where he had first encountered defendant, and found that it had been burglarized. He contacted the owner, who came to the station. Trooper Bernard ascertained from the station owner that various items were missing. After completing his investigation, the trooper returned to the Albany Patrol Office and contacted Corporal Small at approximately 7:30 a.m. Bernard and Small went to a private lot where the car was being stored and searched the car. They found property appearing to be that stolen from the gas station, as well as identification, appearing to be defendant's, in the name "Steven Guy Pelletier."

The two troopers then returned to the jail and removed defendant to an interview room. Corporal Small asked defendant if he recalled the rights that had been read to him previously. Defendant replied, "Yes." Defendant was asked if he would talk further about the car or gas station. Defendant made no definitive response but, as Trooper Bernard testified at the pretrial hearing, "eventually" talked with the troopers for between 30 to 45 minutes. Initially, the troopers learned from defendant that his name was Pelletier as stated on the identification card. During the course of the interview, Bernard and Small pointed out several inconsistencies in defendant's story, and eventually elicited a confession. Defendant stated that he had found a vehicle with keys in it at a college in Salem and embarked toward his Arizona destination. He ran out of gas on the freeway and walked to a gas station by which he had recently driven. Finding the station closed, he broke into the gas station by smashing a window. He pried open the cash boxes with a screwdriver and removed the money, and unlocked the cigarette vending machine in the office with keys he

found, removing the coins from the machine. Defendant then took a five-gallon gas can from the garage area, kept the screwdriver, and left through the broken window. Soon afterwards, he encountered Trooper Bernard.

At the pretrial hearing on the admissibility of his statements to the police, defendant did not testify. Both troopers, in addition to relating the circumstances detailed above, testified that they used no threats or promises to induce defendant to talk. They also testified that at no time during the interview at the police station did defendant indicate in any fashion that he did not want to talk to the officers.

Following the hearing, the trial court ruled that the statements were voluntarily made, and that the question of voluntariness should be submitted to the jury for final determination.

We first address the admissibility of defendant's initial confession to stealing the car, given to Trooper Bernard in the patrol car. In *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), the United States Supreme Court stated:

> "* * * If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. * * *" 384 US at 473-74.

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination * * *." 384 US at 475 (Citations omitted.)

By questioning defendant after defendant plainly asserted his right to remain silent, the trooper violated defendant's Fifth Amendment privilege. The trial

court erred, therefore, in denying defendant's motion to suppress testimony concerning any statement at the scene of the arrest after the defendant declined to be questioned, except for statements regarding identification. *See State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978), *rev den* (1979).

The admissibility of defendant's second statement presents a problem previously addressed by this court. *See, e.g., State v. Foster,* 40 Or App 635, 596 P2d 572, *rev allowed* (1979); *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* (1978). Our preliminary inquiry regarding the admissibility of the second confession concerns "whether it is in any substantial degree the result of the earlier one." *State v. Foster, supra,* 40 Or App at 640. We note that a substantial part of the second confession, which was a product of determined interrogation by the two troopers, merely expanded somewhat on defendant's prior statement that he had taken the car in Salem because he was tired of hitchhiking. Thus, we fail to see how defendant could fail to be "influenced by the content of . . . admissions made during the preceding interrogation." 40 Or App at 640. From the totality of the circumstances, we conclude that the second confession was a result of and was tainted by the earlier interrogation.

We hold that the trial court erred in denying defendant's motion to suppress testimony concerning certain of defendant's statements to police. The state does not contend that the admission of this testimony, if incorrect, was harmless error. The case must be reversed and remanded for a new trial.

Defendant failed to challenge at trial the admissibility of evidence obtained from the search of the car after it was towed to a private towing lot. He has attempted to raise that issue here for the first time, arguing that the warrantless search of the car and his zippered wallet found in the car violated his right to protection from warrantless searches and seizures under the Fourth Amendment to the United States

[682]

Constitution and Article I, Section 9 of the Oregon Constitution.

We recognize that since the issue of the admissibility of the items found in the search was not raised below, the parties may not have presented all evidence pertinent to the determination of the constitutional issues involved. We consider it inappropriate, therefore, to express an opinion on these issues given the present state of the record.

Reversed and remanded for new trial.

**THORNTON, J.,** dissenting.

Defendant was convicted after jury trial of unauthorized use of a motor vehicle and burglary.

He appeals, assigning the following as errors:

(1) Overruling defendant's motion to exclude testimony concerning statements made to the police after he invoked his right to remain silent.

(2) Admitting items seized from the motor vehicle several hours after defendant was arrested.

(3) Prosecuting defendant as an adult.

There was evidence to support the trial court's finding that defendant's statements were voluntary and it is binding on this court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1958).

Recently in *State v. Billings,* 42 Or App 99, 599 P2d 1240 (1979), where the admissibility of a written confession was involved, this court had occasion to consider a similar issue. There we observed:

> "* * * Defendant argues * * * that *State v. Turner,* 32 Or App 61, 573 P2d 326 (1978), barred the third warning [of the accused's rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966),] and the subsequent interrogation. *Turner* rests on the proposition that it is improper to induce a

defendant to talk after he has asserted his right to remain silent. The trial court here, however, found that '[t]he police * * * did not make any threats or promises of any kind to the defendant.' Thus neither leg of the rule in *Turner* is applicable." 42 Or App at 102.

While in the case at bar the trial judge did not make any express finding on this specific point, the court found that the defendant's statements were voluntarily made. Additionally, the testimony of the police that no threats or promises were made was not challenged. Accordingly, defendant's contention cannot be sustained. *Cf. State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978), *rev den* 285 Or 319 (1979).

As to defendant's two other assignments, the record shows that neither point was raised or preserved in the trial court. For this reason, I agree that we should decline to consider either assignment on appeal. *State v. Haynes,* 233 Or 292, 294, 377 P2d 166 (1962); *State v. Marcus,* 2 Or App 269, 271-72, 467 P2d 121, *rev den* (1970).

The proof of defendant's guilt is overwhelming. Even assuming there was error, it was harmless. I would therefore affirm. Oregon Constitution, Amended Art VII, § 3; *State v. Rollf,* 42 Or App 79, 598 P2d 1309 (1979).