Argued and submitted September 26, 1979,
reversed and remanded for a new trial January 21, 1980

STATE OF OREGON,
Respondent,

v.

ROBERT DWAYNE GHOLSTON,
*Appellant.*

(No. C 78-08-13691, CA 13295)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT DWAYNE GHOLSTON,
*Appellant.*

(No. 78-10-15948, CA 13296)
(cases consolidated)

605 P2d 309

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this consolidated appeal, defendant seeks reversal of his convictions for theft in the first degree and burglary in the first degree. He contends that his statements concerning the burglary should have been suppressed because either: (1) they were induced by evidence seized in an unlawful search, or (2) they were obtained as a result of a deprivation of his constitutional rights against self-incrimination and to the effective assistance of counsel, having been made or induced by police interrogation after counsel had been appointed but not yet consulted.

After being indicted for theft, defendant was arrested at about 10 p.m. on August 22, 1978, and was advised twice of his constitutional rights at the scene of the arrest. A standard constitutional rights form was read to him in each instance. He signed at least one of the forms, and by that one signature he apparently not only acknowledged his awareness of those rights, but also waived them.[1] He was taken to the

---

[1]

"CONSTITUTIONAL RIGHTS WARNING:
SEARCH BY CONSENT

"BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS,

"(1)  You have the right to remain silent.

"(2)  Anything you say can be used against you in court.

"(3)  You have the right to talk to a lawyer before we ask you any questions and have him present while you are being questioned.

"(4)  If you cannot afford a lawyer, the court will appoint one before any questioning.

"I HAVE READ THIS STATEMENT OF MY RIGHTS AND AM FULLY AWARE OF THESE RIGHTS.

"I AM WILLING TO ANSWER QUESTIONS ASKED OF ME.

"I DO NOT DESIRE THE PRESENCE OF A LAWYER AT THIS TIME.

"THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME."

police station; again the rights form was read to him. At that time he denied culpability. When informed that other witnesses contradicted his story, defendant stated that he did not wish to talk about the case or make any statements and that he wanted an attorney. He was booked at 1 a.m. on the morning of the 23rd and arraigned at 2 p.m. that day, at which time counsel was appointed at his request.

At 12:20 a.m., on August 23, 1978, defendant signed a consent to search form permitting the search of his residence. That consent was withdrawn when he learned that he could not accompany the detectives during the search. Thereafter a search warrant was issued, but it directed a search of the wrong premises. When the error was discovered, the detectives did not obtain a corrected search warrant, but executed the warrant by searching premises not described therein. The state concedes that the subsequent search was unlawful and that the trial court's suppression of evidence seized as a result of that search was proper.

On the afternoon of the 24th, defendant was interviewed by a person, not an attorney, from the Public Defender's office, whom the police thought was an investigator. Immediately thereafter, a detective, on his own initiative, went into the interview room in which defendant was then held, and once again defendant was read his constitutional rights from the same standard form used on all previous occasions. This time, however, the form was not signed by defendant. Defendant did not affirmatively request the presence of his attorney nor did he request that the interrogation be stopped. During the interrogation, the defendant admitted some involvement in the burglary and the detective discussed the fruits of his search of defendant's apartment.

Disposing first of defendant's contention that his statements concerning his involvement in the burglary should have been suppressed as "fruits of an illegal search," *Wong Sun v. United States,* 371 US 471, 83 S

Ct 407, 9 L Ed 2d 441 (1963), there is evidence to support the trial court's finding that defendant's admissions preceded any discussion of evidence seized during the unlawful search. While the record is not as clear as it might be, the detective who conducted the interrogation ultimately testified in response to a direct question that he did not mention any items found in defendant's apartment until after the admission was made. As a matter of historical fact, we are bound by the trial court's finding if the record supports it. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. Warner,* 284 Or 147, 585 P2d 681 (1978).

Defendant's other contention, that his constitutional rights against self-incrimination and to the effective assistance of counsel were violated by police interrogation after his arraignment and after counsel had been appointed for him is more troublesome. He urges that we adopt a rule that any statements made by a defendant under such circumstances are not admissible in evidence unless counsel is present at the time they are made, relying on *People v. Hobson,* 39 NY2d 479, 348 NE2d 894, 384 NYS2d 419 (1976). That *per se* rule, however, has been rejected very recently, albeit in *dicta,* by the Oregon Supreme Court in *State v. Haynes,* 288 Or 59, 602 P2d 272 (1979), and *State v. Singleton,* 288 Or 89, 602 P2d 1059 (1979).

Without regard to the *per se* rule he urges, defendant contends that the state did not sustain its "heavy burden" of establishing that he waived his right to remain silent and his right to the assistance of counsel at the time he made the statements he seeks to have suppressed. There is no question in this case that defendant was advised of his rights as required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). Nor is there any question that initially he was willing to, and did, waive those rights: he signed at least one form expressly waiving them. After talking with the detectives for a while following his waiver, it is also clear that he

[117]

invoked his right to remain silent and his right to counsel, at which time all questioning was terminated, as it must be.

However, after defendant was arraigned and counsel was appointed to represent him, questioning was renewed by a detective instilled by a desire to obtain more information about both crimes; defendant did not initiate the conversation and the statements were responsive to questions put to him. There is no doubt that defendant could have waived his rights at that time, and if he did so any statements he made would be admissible. *State v. Singleton, supra.* [2] In that case, the court stated:

> "* * * [W]e hold that when in such a case a defendant, after arrest and upon being questioned by the police, exercises his right to remain silent and also informs the police of his desire to exercise his right to consult with an attorney, the police must 'scrupulously honor' those rights; that when in such a case it is contended by the state that the defendant has subsequently waived those rights there is a presumption that the waiver was involuntary and the state has a 'heavy burden' to demonstrate that the defendant knowingly and intelligently waived those rights; and that the determination whether there was such a waiver is to be made upon an inquiry into 'the totality of the surrounding circumstances.' We also hold that in such a case the question of waiver is not simply a question of historical fact, but one which requires the application of constitutional principles to the facts as found." 288 Or at 104.

So viewing the record in this case, we cannot say that the state carried its "heavy burden" to demonstrate that defendant knowingly and intelligently waived his rights. The detective simply read defendant his rights again from the form and started talking to him about both offenses and asking questions about

---

[2] It should be noted that in *Singleton,* the defendant had not been indicted and did not have counsel at the time he confessed. It was on this basis that Denecke, C. J., concurred.

them, and defendant talked and answered the questions without reinvoking his rights. The trial court found:

"On that testimony, it appears to me that Mr. Gholston waived his right to counsel when he spoke to Detective Walker on the second occasion. * * *

"* * * If Mr. Gholston wants to insist upon his right to remain silent, he can do so. He doesn't have to answer at all."

The trial court concluded that it was sufficient for the state to show that defendant was advised of his rights prior to the renewed questioning after counsel was appointed, and that defendant's waiver was established by not refusing to answer.

There is no evidence in the record, and the trial court did not find, that defendant was asked if he wanted to waive his right to remain silent or to have his counsel present, or even if he had changed his mind,[3] only that he did not affirmatively reassert either right. Even though defendant, shortly after he was arrested and advised of his rights, was asked if he wanted to waive those rights and did so by signing a waiver, no such waiver was signed on the occasion in question. By way of contrast, the defendant in *Singleton* signed a waiver on each occasion the police talked to him subsequent to his asserting his right to counsel.

This case is unlike *State v. Foster,* 40 Or App 635, 596 P2d 572 (1979), in that here the defendant was simply re-read his *Miranda* rights from the standard form (see note 1, *supra*) even though he had already asked for and received appointment of counsel. In *Foster,* when the officer contacted the defendant the day following his invoking the right to counsel the officer explained the situation with respect to defendant's rights, with specific reference to his right to

---

[3] *See State v. Rodriguez,* 37 Or App 355, 587 P2d 487, *rev den* (1978), where we said that the officer could have resolved the question by asking the defendant straightforwardly if he had changed his mind and wished to discuss the case.

counsel and advised defendant that if he had an attorney present the attorney would advise him not to discuss the matter. Defendant was told, however, that he could waive his right to have an attorney present, whereupon he agreed to do so. Before giving his statement, he asked to have another person present to act as a witness. The officer located another person, who happened to be an attorney, who came into the room as a witness. When the attorney-witness heard what was going on, he told the defendant he needed an attorney. The attorney left, and defendant expressly waived his right to have counsel present, and proceeded with his statement. We held there was a voluntary waiver.

In this case unless we can say, as did the trial judge, that the failure of the defendant affirmatively to reinvoke his rights after he had requested and obtained counsel established that he knowingly and intelligently intended to relinquish and waive those rights, the state's evidence falls short of the mark. To so hold would not only render meaningless the requirement that the police "scrupulously honor" defendant's asserted rights, but would fly in the face of the presumption that the waiver was involuntary. It would, in effect, shift the burden to the defendant. We decline to do so, and hold that the statements should have been suppressed.

Because the two offenses with which defendant was charged were inextricably tied together, our conclusion that the trial court erred in denying the motion to suppress requires reversal of both convictions.

Reversed and remanded for a new trial.