Submitted on record and appellants' brief November 21, 1979, affirmed January 28, 1980

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03448, CA 14929)

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03449, CA 14930)

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03450, CA 14931)

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03551, CA 14932)

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03552, CA 14933)

STATE OF OREGON,
*Appellant,*

*v.*

LARRY ROMARD McDADE,
*Respondent.*

(No. 10-79-03553, CA 14934)

[269]

## STATE OF OREGON,
### *Appellant,*
*v.*
## LARRY ROMARD McDADE,
### *Respondent.*

(No. 10-79-03554, CA 15008)

(cases consolidated)

605 P2d 752

J. Pat Horton, District Attorney, and Frederick A. Hugi, Assistant District Attorney, Eugene, filed the brief for appellant.

No appearance for respondent.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

Pursuant to ORS 138.060(3), the state appeals the trial court's pretrial ruling suppressing evidence of incriminating statements made by defendant. We affirm.

At the pretrial suppression hearing, Officer Olson of the Eugene Police Department testified that he helped apprehend defendant and placed him under arrest for attempted burglary. After taking defendant to the Eugene Police Department, the officer brought him to an office and "immediately advised Mr. McDade of his Miranda[1] rights." The officer stated that defendant answered that he understood those rights, and said, "Well, I really don't think I want to talk to you. I think I want to talk to my attorney." The officer then testified that he asked no further questions, and proceeded to search defendant. He found two checks in defendant's right front pocket, which led him to suspect a possible burglary other than the one for which defendant had been arrested. The officer then told defendant, "I'd like to know what happened here. I'd like to have your side of the story, but before you can give it to me, I have to readvise you of your rights. You have to acknowledge that you understand both the rights to remain silent and the right to talk without an attorney present." The officer then read the *Miranda* warnings to defendant again. Officer Olson estimated that 10 to 15 minutes passed between the first and second advice of rights. After the second advice of rights, defendant confessed to the crimes charged in the seven indictments involved here.

The trial court stated that it accepted the officer's testimony as accurate and true, and entered an order stating the following:

"(1) All statements made by the defendant Larry Romard McDade to law enforcement officers on April 3, 1979 were freely and voluntarily given.

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[271]

"(2) The defendant was properly advised of his Miranda rights by Officer Olson, and the defendant invoked his right to remain silent and to talk with a lawyer prior to subsequent questioning. Subsequently, the defendant was properly readvised of his Miranda rights and made a voluntary statement to law enforcement officers.

"These subsequent statements were made in violation of the defendant's Miranda rights and, therefore, are inadmissible."[2]

In *Miranda v. Arizona,* the United States Supreme Court outlined the procedures to be followed once an individual invokes his right to consult with an attorney:

" * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent." 384 US at 474.

*Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975), in the context of the invocation of the right to remain silent, rejected the notion that *Miranda* created a "*per se* proscription of indefinite duration upon any further questioning by a police officer on any subject," once the right is invoked. 423 US at 102-03. That case concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether

---

[2] It is apparent from the transcript and the ultimate decision to exclude the statements that the trial court used the terms "voluntary" and "voluntarily" only to describe the defendant's state of mind, not to describe constitutional conclusions. The court stated:

"I'm going to find that the Defendant's statements were made freely and voluntarily. I don't think there were any threats made against him to induce him to talk. I certainly don't think he was promised any reward or immunity to induce him to talk. I think that he spoke freely and voluntarily with the officers."

his 'right to cut off questioning' was 'scrupulously honored.'" 423 US at 104. *See State v. Singleton,* 288 Or 89, 602 P2d 1059 (1979). Police must similarly honor defendant's request for counsel. *State v. Singleton, supra,* slip op. at 15 n.3.

Here, a mere 10 to 15 minutes after defendant invoked his right to remain silent and his right to consult with an attorney, Officer Olson, without affording defendant an opportunity to call an attorney, pressed defendant for an explanation of "his side of the story; of what happened tonight." This procedure is constitutionally indistinguishable from "the continuation of custodial interrogation after a momentary cessation" prohibited by *Michigan v. Mosley,* 423 US at 102. Although the officer once again read defendant the constitutionally required warnings, we conclude under the circumstances that the police did not "scrupulously honor" defendant's right to counsel. *Cf. State v. Pelletier,* 43 Or App 677, 603 P2d 1247 (1979) (questioning five to ten minutes after invocation of right to remain silent). The discovery of the stolen checks does not appear to have been an intervening event which caused defendant to reassess his tactical position. Defendant's statements, therefore, were inadmissible at trial and properly suppressed.

Affirmed.