Argued and submitted September 7,
reversed and remanded November 6, 1979

## STATE OF OREGON,
### *Respondent,*
### *v.*
## CHARLES LEROY HAYNES,
### *Petitioner.*

(TC 78-1762, CA 11461, SC 26285)

602 P2d 272

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender.

Brian R. Barnes, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney.

LINDE, J.

Denecke, C.J., specially concurring.

**LINDE, J.**

The issue to be decided is whether the prosecution may use against a defendant statements obtained from him while in police custody and after the police, but not the defendant, knew that an attorney sought to consult with him. The question came before the Court of Appeals simultaneously in two cases, in one of which the statement had been admitted and in the other of which it had been excluded by the respective trial courts. The Court of Appeals was evenly divided on the issue, thus affirming both trial courts in this respect. *State v. Henry, State v. Haynes,* 40 Or App 129, 594 P2d 436 (1979). We allowed review. We hold that a suspect who has previously been told in general terms of his right to counsel and has waived this right must be informed when counsel actually seeks to consult with him and must voluntarily and intelligently have rejected that opportunity, before further statements may thereafter be taken from him and used against him.

The course of events in the case now before us, *State v. Haynes,* may be summarized as follows. Sergeant Smith of the Springfield police department, accompanied by an investigator, arrested defendant about 6:30 p.m. on Saturday, March 11, 1978, as a suspect in a murder investigation. Smith testified that immediately upon arrest he advised defendant as follows:

> "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to talk to a lawyer and have him present with you while you are being questioned and when you are required to face witnesses. If you cannot afford to hire a lawyer, one will be appointed to represent you if you request one."

He repeated this advice to defendant when they reached the police station, and defendant acknowledged that he understood the advice and signed a so-called *Miranda*[1] card on which the above statements were set out.

[1] So called because the federal constitutional version of these rights was established in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[61]

Sergeant Smith questioned defendant in Smith's office. Defendant originally claimed to remember nothing but eventually made admissions substantially implicating him in the homicide. He was placed in a cell at midnight. At about 2:30 a.m. defendant was taken to another room to view some knives and invited to state if one of them was used in the murder. He identified one of the knives and was returned to his cell until 8:30 on Sunday morning, March 12. At that time Smith took defendant from the Springfield police jail in an automobile and drove to the Marcola area. He testified that he did so in order to question defendant further and to obtain defendant's cooperation in locating parts of the body of the victim, which had been dismembered.

Meanwhile, defendant's wife attempted to retain an attorney. At approximately 2:00 a.m. Sunday morning she called Robert Naslund, a former Lane County district attorney practicing in Springfield, to check into her husband's arrest. Naslund telephoned the Springfield Police Department and obtained confirmation that defendant was held on a homicide charge, which he reported to Mrs. Haynes. Naslund declined to undertake defendant's representation and recommended another Lane County attorney, Kenneth Morrow, asking Mrs. Haynes not to call Morrow before 7:00 o'clock that morning. Mrs. Haynes telephoned Morrow at the indicated hour and asked him to represent her husband.

Morrow spent the following hour seeking to arrange a visit with defendant. He telephoned the Springfield Police Department and told the woman who answered that he had been retained to represent Charles Haynes and wanted to confirm that Haynes was at the Springfield jail. The woman reported after a short interval that Haynes was not there, no one had been arrested for murder, and "we know nothing about it." She repeated this answer when Morrow made a second call a few minutes later. Morrow then tried to

[62]

locate Haynes at the nearby Eugene Police Department. Eventually a Eugene detective checked once more with the Springfield police and told Morrow that he could find Haynes at the Springfield jail, where Morrow should contact Sergeant Stewart. Morrow telephoned Stewart about 8:00 a.m. and said that he was coming to Springfield to see Haynes. Morrow testified that he arrived at the police department sometime before 8:30 a.m. He also testified that he saw two men leave the building by a side entrance and enter a private car.

As mentioned earlier, this was at about the same time that Sergeant Smith took defendant from the jail and for a drive in an automobile. Smith testified that at this time he knew that Morrow was trying to locate Haynes and regarded Haynes as his client, because it was Smith who had received the telephone inquiry from the Eugene detective and had asked the detective to inform Morrow where Haynes could be found. Judge Spencer stated in his oral findings:

> "I'm satisfied that [Sergeant Stewart] knew that Sergeant Smith was taking the prisoner, and that they both were aware that Morrow would be there to see Haynes and would find him gone. And whether they articulated between themselves that they were doing what they were doing to frustrate Mr. Morrow's desire to see Haynes or not, that was the practical effect. It was the effect that they had to anticipate. And the implication seems to me to be overwhelming that it was their intent."

Sergeant Smith and the defendant remained away from the Springfield headquarters until about 11:00 a.m. During this period defendant disclosed some details concerning the disposal of the victim's remains. He later repeated his admissions in the presence of a second officer at the police station. After a confrontation with the victim's husband, who was also held at the station as a suspect, defendant made a tape recorded statement describing the murder. On Sunday evening, the two were taken to defendant's residence and

videotaped in a reenactment of the events. Defendant made additional statements on Monday, March 13.

Upon being indicted and entering a plea of not guilty, defendant moved to suppress all statements taken from him while in custody as well as the videotape of the reenactment of the crime. After an omnibus hearing, ORS 135.037, Judge Spencer denied the motion in its entirety. Subsequently, by agreement between the prosecution and the defense, defendant waived a jury and proceeded to trial before Judge Beckett on an oral stipulation which reserved his right to challenge by appeal Judge Spencer's earlier ruling on the motion to suppress. The stipulation was that the prosecution could show facts, which a trier of fact would believe beyond a reasonable doubt, that would result in defendant's conviction for murder, subject only to defendant's right to appeal the matters earlier heard before Judge Spencer. In accordance with the stipulation, Judge Beckett pronounced judgment of conviction and imposed a sentence of life imprisonment. As previously stated, the Court of Appeals affirmed the judgment by an evenly divided court.

At the outset we hold, as the Court of Appeals implicitly did, that the stipulation was effective to save defendant's right to appeal. The prosecution and the trial court clearly accepted the stipulation on that understanding, and we need not speculate what the defendant might have done without this assurance.

Defendant asserts a general claim that all his statements made to the police while in custody were the product of police coercion and involuntary as a matter of law. The claim is based primarily on the facts that after his arrest, defendant was questioned from 7:00 p.m. to midnight and at about 2:30 a.m. was taken to view the previously mentioned knives, and that he was questioned on nine separate occasions for approximately twenty hours following his arrest. On the other hand, the prosecution stresses that defendant was repeatedly reminded of his rights to remain silent and

to have the aid of the attorney, and that defendant acknowledged that he understood these rights, as Judge Spencer found to be a fact. Of course, knowledge of these rights is not conclusive on the separate issue of voluntariness. However, Judge Spencer also found that defendant "was not threatened or promised anything, that his statements were freely and voluntarily made in the traditional pre-Miranda sense." While this finding binds us only as to historical facts, not as to the legal standard of "voluntariness," the record adequately supports that finding during the entire time pertinent to our decision of this issue, that is, until Mr. Morrow sought access to defendant at the Springfield police station. That event gave rise to a different issue.

On this second issue, the consequences of the failure of the police to tell defendant that Mr. Morrow was coming to the police station to represent him and of their failure to keep defendant at the station for this purpose, defendant urges that the correct rule is the one applied in New York as well as in some other states. Beginning with *People v. DiBiasi,* 7 NY2d 544, 166 NE2d 825, 200 NYS2d 21 (1960), *People v. Donovan,* 13 NY2d 148, 193 NE2d 628, 243 NYS2d 841 (1963), *People v. Arthur,* 22 NY2d 325, 239 NE2d 537, 292 NYS2d 663 (1968), which were reaffirmed in *People v. Hobson,* 39 NY2d 479, 348 NE2d 894, 384 NYS2d 419 (1976), the New York Court of Appeals established the rule that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel." 39 NY2d at 483. *See* Note, 5 Ford Urb L J 401 (1977). The same court recently applied the rule to suppress a confession when, much as in the case before us, an attorney retained by the arrested person's family repeatedly telephoned the police department, identified himself, and sought access to the arrested person but was erroneously told that the police did not "have" this person. The court stated:

[65]

"As this case illustrates, the right to counsel is of little value if the attorney cannot communicate with the defendant or with the officials holding him in custody or can only reach them after extended delay when the investigation is, in effect, completed. The police, of course, must recognize this and must also realize that even though the defendant may not have retained counsel prior to being taken into custody, an attorney, later retained by friends or family or otherwise representing him . . . may wish to consult with him while he is being questioned by the police. And when an attorney does not know where the defendant is being held, there is little doubt that the police are better equipped than he is for locating the defendant or the officers immediately or ultimately responsible for the investigation. Indeed if the police have a person in custody they should be charged with knowledge of his whereabouts.

"In sum, once a person has been taken into custody, the burden is on the police to keep track of him and to establish and maintain procedures which will insure that an attorney representing him may communicate with him and with the officials responsible for the investigation, without unreasonable delay . . . ."

*People v. Pinzon,* 44 NY2d 458, 464, 377 NE2d 721, 406 NYS2d 268 (1978).

The Supreme Judicial Court of Massachusetts reached the same result in *Commonwealth v. McKenna,* 355 Mass 313, 244 NE2d 560 (1969). Upon being arrested at their homes for murder, McKenna and Riley had been advised of the pertinent rights. McKenna asked his aunt to call Mr. Collins, an attorney representing him on another charge. He made no request of the police, and at the station declined an offer to use the telephone. While McKenna was being questioned, Collins called the police station and told the sergeant conducting the investigation that he was counsel for McKenna and that McKenna had a right to have him present before any interrogation. The sergeant gave evasive answers and continued the interrogation that led to the incriminating statements

before the attorney was able to speak with McKenna. Similarly, Riley's uncle, who was a lawyer, was kept waiting at the police station and the sergeant did not inform Riley of their presence before Riley made the inculpatory statements that he sought to suppress. The Massachusetts court stated:

> "[W]e hold that when Mr. Collins identified himself to Sergeant Gannon and invoked on McKenna's behalf his right to counsel and stated that he wanted to be with McKenna wherever the interrogation was to be held, it was Gannon's duty immediately so to inform McKenna. Sergeant Gannon's failure to do so denied rather than afforded McKenna the opportunity to exercise his right to counsel at that stage of the interrogation if in fact the interrogation had commenced. The legal consequence of the denial of the opportunity to reconsider whether he wanted counsel is that whatever 'waiver' there may have been up to the time Mr. Collins made his request to Sergeant Gannon that he be present became then inoperative. Conceivably, McKenna might have chosen to go on with the interrogation. But he was entitled to know of his counsel's availability and, with that knowledge, to make the choice with intelligence and understanding. . . ."

244 NE2d at 566. The same applied to Riley's statements:

> "His uncle and an associate arrived at the police station twenty minutes after Riley who in the interim was held incommunicado and had remained silent. His counsel insistently demanded that they see him. They had the right to see Riley and Riley had the right at once to know of their presence, even though after the *Miranda* warnings he had not asked to see them. The 'implied waiver' of his right to counsel did not survive the refusal of the police to admit counsel to him or their failure to inform him that counsel were present. . . ."

244 NE2d at 566-567.

In a recent Pennsylvania decision, *Commonwealth v. Hilliard,* 471 Pa 318, 370 A2d 322 (1977), the

Supreme Court of that state reached the same conclusion on facts much like the present, when an attorney, retained by the arrested suspect's wife, appeared at the police station and was repeatedly told that the person he asked to see was not being held. The court held that the suspect's failure to request counsel when an attorney has been denied access to him and he has not been informed of the attorney's availability cannot support a finding of a waiver of counsel.

In response, the state makes two arguments. First, it maintains that defendant's admissions were voluntary in the traditional sense that defendant's will was not overborne by threats or promises or by circumstances that were intrinsically coercive to one of his age, intelligence, experience, physical condition, or other pertinent characteristics. As stated above, the court conducting the omnibus hearing so found, and the record supports this finding. The statements obtained from defendant prior to Mr. Morrow's call to the Springfield police headquarters were admissible.

Second, the state maintains that Oregon should not follow the holdings of the cases we have quoted above. Our past decisions record these developments. In 1961, immediately after the New York court's decision in *People v. DiBiasi, supra,* this court stated that it was not prepared to follow that decision so far as to vitiate all admissions obtained by questioning a suspect in the absence of his attorney. *State v. Kristich,* 226 Or 240, 248, 359 P2d 1106 (1961). That opinion was much qualified in recognition of the changes then occurring in protecting the constitutional rights of suspects, stating that "it is now clear that criminal convictions may be jeopardized on appeal by the failure to provide or permit access to counsel at preliminary stages of the criminal process as well as upon trial." 226 Or at 247-248, 250.[2] That was before the decisions of the United

___

[2] The court also pointed out that the defendant's statements were admissions but did not admit the offense for which he was tried; thus "[t]his case does not present the problem that may be raised when a confession is obtained before an accused has had any opportunity to consult with an attorney." 226 Or at 249-250.

[68]

States Supreme Court in *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L Ed 2d 246 (1964), and *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964). In 1965, this court noted that those decisions had substantially undercut the premises on which *State v. Kristich, supra,* was decided. *State v. Neely,* 239 Or 487, 499-501, 395 P2d 557, 398 P2d 482 (1965).

The following year, in *State v. Atherton,* 242 Or 621, 410 P2d 208 (1966), the court affirmed the admission into evidence of otherwise voluntary statements made by a suspect in custody, after proper warnings, in the absence of counsel whom the suspect was known to have retained but who, without any police interference, had not yet found time to consult with his client. The court stated defendant's position on appeal as proposing "to extend the holding in *State v. Neely,* supra, to hold, as a matter of law, that any police interrogation after arrest is illegal." 242 Or at 625. The court rejected that position. It held that even a suspect already represented by counsel can validly waive the presence of counsel and voluntarily respond to police questions if this is done with knowledge that he or she may remain silent or may end the dialogue and ask to consult counsel at any time. This was also held in *State v. Sanford,* 245 Or 397, 421 P2d 988 (1966). In both cases, two justices, the authors of *Neely* and *Kristich, supra,* dissented on the ground that without a firm rule against questioning suspects in the absence of counsel, both the voluntariness of a confession obtained by such questioning and also the defendant's freedom from secret interrogation and right to resist it and to consult counsel were left too much to subsequent judicial belief or disbelief of the police testimony concerning the circumstances of defendant's "waiver" of these rights. 242 Or at 632-633.[3]

---

[3] The dissenters in *Atherton* quoted the trial court's finding as characteristic of the result when the court must choose between the testimony of a
*(Continued on following page)*

We recognize that these practical considerations are not without force. However, we need not in this case go so far as to accept the New York rule urged by the defendant, and we do not do so. As in *Atherton,* we do not hold that an arrested person, not yet indicted or formally charged with the crime, cannot voluntarily and after proper warnings waive consultation with counsel and make voluntary statements which will be admissible against him. We hold only that when unknown to the person in this situation an identified attorney is actually available and seeking an opportunity to consult with him, and the police do not inform him of that fact, any statement or the fruits of any statement obtained after the police themselves know of the attorney's efforts to reach the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel.

It should be noted that the rules applied by the New York court developed from two distinct premises, the right to consult counsel and the right not to incriminate oneself, and in two distinct situations, upon arrest and after a suspect becomes a defendant formally charged with a crime. It is not disputed that an arrested person has a right to have access to counsel when taken into custody and thereafter, subject only to the practical necessities of custody that may temporarily prevent immediate communication with counsel. We know nothing in Oregon law, nor did counsel for the state when asked, that would authorize the police to prevent or delay communication between an arrested person and a lawyer who is, or who is asked to become, that person's attorney. Certainly nothing of the kind

*(Continued from previous page)*

police officer and a defendant whose confession to a crime the court is asked to suppress:

> " 'THE COURT: Well, it boils down to whether or not the Court believes Officer Wold or whether the Court believes this defendant. I have to believe one or the other, and between the two of them, I believe Officer Wold. * * *' "

242 Or at 632, n. 2. A similar choice had to be made by the court in the present case.

follows from the simple fact of an arrest.[4] To the contrary, police officers in Oregon are told expressly to inform an arrested person of his or her right to legal counsel, and the present defendant was so informed.

However, the issue of a suspect's access to counsel enters cases like the present as an aspect of his right to answer questions or provide incriminating testimony only voluntarily. Or Const art I, § 12, U S Const amend V. It is the incriminating evidence so obtained that defendant seeks to suppress in this case as in all the cases we have cited. No one so far has suggested that interference with an arrested person's access to a lawyer, however improper and subject to other remedies, would itself lead to a reversal of a subsequent conviction if defendant in fact said nothing and no evidence was obtained as a result nor other harm done to his eventual defense. Thus it is not a generalized right to counsel that the decisions we have quoted enforce but, more concretely, the derivative right to the benefit of counsel's efforts to forestall involuntary and incriminating disclosures. But the law does not impose the benefit of those efforts on a defendant who rejects them. They may be waived just as the right to

___

[4] *Cf.* the American Law Institute's Model Code of Pre-Arraignment Procedure, section 140.7 (1975):

"Access, Consultation and Telephoning Rights

"(1) *Access to an Arrested Person.* An attorney undertaking to act as counsel for an arrested person shall have prompt access to such person, by telephone, and in person on counsel's arrival at any place where such person is detained. Counsel for an arrested person shall not be prevented from staying at any such place and being allowed access to the arrested person whenever such person requests his presence. If no counsel for the arrested person is present, similar privileges must be accorded to a relative or friend of the arrested person.

"(2) *Consultation and Telephoning Rights.* An arrested person shall be given reasonable opportunity from time to time during his detention to consult in private with counsel or any relative or friend present in lieu of counsel, and, upon request, to use the telephone."

An accompanying note explains that this section "expresses the principle that at no time may an arrested person be held incommunicado in order to facilitate the investigation." Before there is any necessity for an attorney or an arrested person to show that these elementary rights have been enacted by statute, let alone imposed by federal constitutional law, the

*(Continued on following page)*

remain silent itself may be waived. There is no law that a person in custody may not speak if he so chooses, and without a lawyer's advice. The crucial point is that it must be a knowing choice as well as voluntary in the sense of not being coerced. As the United States Supreme Court recently stated in *Brewer v. Williams,* 430 US 387, 404, 97 S Ct 1232, 51 L Ed 2d 424 (1977), when the state claims waiver it has the burden to show "an intentional relinquishment or abandonment of a known right or privilege," quoting *Johnson v. Zerbst,* 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938).

To pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run. A suspect indifferent to the first offer may well react quite differently to the second. If the attorney appears on request of one's family, that fact may inspire additional confidence.[5] He, too, will perhaps be sent away. We do not hold with the New York court that this decision can be made only in the attorney's presence, although in practice this would obviate the recurring problems of proof that have been mentioned.[6] But we agree with the Massachusetts and Pennsylvania decisions cited above that

---

*(Continued from previous page)*
burden is first on the state to show legal authority for denying them. *Cf. State v. Spada,* 286 Or 305, 594 P2d 815 (1979), and see *State v. Classen,* 285 Or 221, 225-232, 590 P2d 1198 (1979).

[5] For these reasons, it is immaterial that Mr. Morrow "was not then and did not become at any time thereafter the Defendant's attorney," as the circuit court found. Morrow came to the Springfield jail prepared at least to assume the initial responsibility of an attorney, and defendant was denied the opportunity to decide whether he would retain Morrow in that role or proceed without him. *Cf. People v. Pinzon, supra.*

[6] The following procedures have been proposed to establish that the arrested person's rights have in fact been safeguarded, particularly with respect to waiver of counsel and of the right not to answer questions:

"Conditions on Questioning Arrested Persons
*(Continued on following page)*

when law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot

---

"(1) *No Questioning Prior to Warning or Access to Telephone.* No law enforcement officer shall question an arrested person after he has been brought to the police station or otherwise attempt to induce him to make a statement unless he has been advised by the station officer in plain understandable language

"(a) that he is not obliged to say anything and that anything he says may be used in evidence against him;

"(b) that he will not be questioned unless he wishes, and that he may consult a lawyer before being questioned and may have a lawyer present during any questioning; and

"(c) that if he wishes to consult a lawyer or to have a lawyer present during questioning, but is unable to obtain one, he will not be questioned until a lawyer has been provided for him; such advice shall also include information on how he may arrange to have a lawyer so provided.

No law enforcement officer shall question any arrested person who has been brought to a police station until he has been afforded an opportunity to use the telephone pursuant to Subsection 130.1(5).

"(2) *Waivers.* Unless an arrested person is represented by counsel, and his counsel is present or he and his counsel have consented thereto, such person shall not be questioned after he has been brought to the police station unless he waives his right to counsel in accordance with the following procedures:

"(a) After giving the warnings of rights required by Subsection (1), the station officer may then inquire whether the arrested person wishes to waive his right to counsel and to make a statement or consent to questioning in the absence of counsel.

"(b) If the arrested person in response to such inquiry indicates that he wishes to make a statement or consents to questioning in the absence of counsel, he shall be asked to sign a writing to that effect which the station officer shall countersign.

"(c) The arrested person shall be informed that any waiver given hereunder may be revoked by him at any time.

"(d) No waiver shall be sought from an arrested person at any time after he has indicated in any manner that he does not wish to be questioned or that he wishes to consult counsel before submitting to questioning."

American Law Institute, Model Code of Pre-Arraignment Procedure, § 140.8 (1975). Thus the Model Code would allow police station questioning of an arrested person who is represented by counsel only with counsel's consent, and require waivers by one not represented by counsel to be in writing.

thereafter rely on defendant's "waiver" for the use of his subsequent uncounseled statements or resulting evidence against him. We believe this rule protects the suspect's right under article I, section 12, and the federal fifth and 14th amendments not to testify against himself, and also that it suffices to satisfy the statement quoted by defendant from *Miranda v. Arizona, supra,* that police interference with consultations between defendant and an attorney "constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake." 384 US at 465, n. 35.[7]

It is plain that on the facts before us the rule requires suppression of defendant's statements after Mr. Morrow's telephone call informing the Springfield police that he had been asked to represent defendant and was coming to the police station to see him, as well as the videotape made after defendant's admissions to his participation in the homicide. As stated above, the court hearing the motion to suppress found that the police officers knowingly frustrated defendant's opportunity to meet with Morrow when they removed

---

[7] The court there referred to the facts in *Escobedo v. Illinois, supra,* which, like *Massiah v. United States, supra,* was decided on grounds of the 6th amendment right of an "accused . . . to have the Assistance of Counsel for his defence," a right which is part of the due process required of the states under the 14th amendment.

We do not here have the issue whether a defendant may, in the absence of counsel, be asked to waive counsel and answer questions after a "criminal prosecution" has formally begun by charging defendant with a crime. *See* Or Const art I, § 11; *Brewer v. Williams, supra; Massiah v. United States, supra; People v. Meyer,* 11 NY2d 162, 182 NE2d 103, 227 NYS2d 427 (1962); *People v. Waterman,* 9 NY2d 561, 175 NE2d 445, 216 NYS2d 70 (1961); *People v. DiBiasi, supra;* Kamisar, Brewer v. Williams, Massiah, *and* Miranda: *What Is "Interrogation"? When Does It Matter?,* 67 Georgetown L J 1 (1978); White, *Police Trickery in Inducing Confessions,* 127 U Pa L Rev 581, 590-593 (1979); Annot., 90 ALR2d 726.

*See also* Code of Professional Responsibility, DR 7-104(A)(1)(proscribes communicating or causing another to communicate with a party known to be represented by counsel without counsel's consent), cited in *People v. Hobson, supra; United States v. Thomas,* 474 F2d 110, 111-112 (10th Cir 1973); *United States v. Springer,* 460 F2d 1344, 1354-1355 (7th Cir 1972) (Stevens, J., dissenting); Note, 53 Ind L J 313 (1977-1978).

[74]

defendant from jail and that the overwhelming implication was that this was their intent. When the opportunity to consult counsel is in fact frustrated, there is no room for speculation what defendant might or might not have chosen to do after he had that opportunity. Accordingly, the decision of the Court of Appeals must be reversed and the case returned to the circuit court for trial.

Reversed and remanded.

**DENECKE, C. J.,** specially concurring.

I concur in the court's decision. I specially concur because of the dictum in the court's opinion to the effect that there is no law authorizing the police to delay or prevent communication between an arrested person and his or her lawyer. This dictum, stated in connection with the New York exclusionary rule, may create the inference that any evidence obtained as a result of an officer delaying or preventing communication is inadmissible. I would not concur in such a principle.

I also do not necessarily concur in the dictum stated in footnote 4.