Argued and submitted January 23, 1981, reversed January 11,
reconsideration denied March 23,
petition for review allowed June 1, 1982 (293 Or 190)
See later issue Oregon Reports

# MOORE,
*Appellant,*

*v.*

# STATE OF OREGON,
# MOTOR VEHICLES DIVISION,
*Respondent.*

## (No. A7811-18908, CA 18130)

638 P2d 1171

Vincent G. Robeson, Lake Oswego, argued the cause and filed the brief for appellant.

Peggy S. Foraker, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this proceeding under the Implied Consent Law,[1] the Motor Vehicles Division seeks to suspend petitioner's operator's license for 120 days because of his refusal to submit to a chemical breath test following his arrest for driving while under the influence of intoxicants. After a hearing before MVD, petitioner appealed the agency's suspension order to the circuit court for a trial *de novo* pursuant to ORS 482.560.[2] He now seeks reversal of the circuit court's order dismissing his petition. We reverse.

Petitioner raises three questions on appeal, only one of which needs to be addressed: whether petitioner's statements that he wanted to talk to his attorney in response to the officer's request that he submit to a breathalyzer test constituted a refusal under ORS 487.805(2). We have held that such a request is tantamount to a refusal. *Lundquist v. Motor Vehicles Div.,* 23 Or App 507, 543 P2d 29 (1975); *see Cavagnaro v. Motor Veh. Div.,* 19 Or App 725, 528 P2d 1090 (1974). Petitioner contends that the validity of our holdings in those cases was put in question by *State v. Scharf,* 288 Or 621, 605 P2d 690 (1980), a criminal case, in which the court held that, because the defendant had not been allowed his request to consult an attorney prior to taking a breathalyzer test, the results of the test must be excluded in a prosecution for driving under the influence of intoxicants.

Whether or not the holding in *Scharf* would have any application to this civil proceeding is academic in light

---

[1] ORS 487.805 to 487.835 and ORS 482.540 to 482.580.

[2] ORS 482.560 provides:

"(1) If, after a hearing as provided by ORS 482.540 and 482.550, an order of suspension is issued, the person shall have the right, within 30 days after he receives notice of the order of suspension, to appeal the matter by filing a petition in the circuit court for the county where he resides. The court upon receipt of the petition shall set the matter for trial upon 10 days' notice to the division and to the appellant. The trial in the circuit court shall be de novo and the appellant shall have the right to a jury as provided in criminal actions.

"(2) No order of suspension issued in accordance with subsection (1) of ORS 482.550 shall take effect until the time to appeal has expired. If an appeal is filed, the order of suspension shall take effect when affirmed on appeal or when the appeal is dismissed."

of the Supreme Court's decision in *State v. Newton,* 291 Or 788, 636 P2d 393 (1981), overruling *Scharf.* During the course of its analysis in *Newton,* the court addressed specifically the right of an arrestee to call a lawyer before deciding whether to submit to a breathalyzer test under the Implied Consent Law.[3] The plurality opinion stated:

"\* \* \* Defendant's freedom to call a lawyer before deciding to submit to breathalyzer testing was not safeguarded in this situation by the Sixth or Fourth Amendments, but, under the Fourteenth Amendment, his freedom to do so could not be foreclosed or deferred unless the police were authorized to do so. Defendant's liberty to communicate as he chose was to be free from 'purposeless restraints,' but subject to lawful restraints. \* \* \*" 291 Or at 806-07.

The record in this case is clear that petitioner's "refusal" to take the test was predicated solely upon his statements that he wanted to talk to his lawyer. When the police arrived at the police station with petitioner, they asked him to take the breathalyzer test. His response was that he wanted to call his lawyer. Thereupon he was advised of the consequences of his refusal to take the test and of his rights under the Implied Consent Law. Again, petitioner requested permission to call his attorney, at which point the officers advised him that he had refused to take the test. Within a few minutes after that, petitioner was allowed to call his attorney.

Although there is a conflict between the testimony of the officers and that of petitioner as to whether he contacted his attorney at that time, that conflict is of no consequence, because the officers did not thereafter request petitioner to take the breathalyzer test. As far as they were concerned, petitioner had already refused, and a refusal form had been filled out stating that petitioner's refusal resulted from his requesting to talk to his attorney.

In *Newton,* the plurality opinion stated:

"Here, there was no showing that the time required to make a call would have reduced the efficacy of the breathalyzer test. Indeed, the police allowed about two hours to transpire between the arrest and the breathalyzer

---

[3] Although there are four opinions in *Newton,* all of them recognize the right of the arrestee to call his attorney, albeit their rationales differ.

request, which suggests a lack of urgency. Moreover, Oregon Administrative Rule 333-13-020 (1972), which regulates the manner of breathalyzer testing, requires that the person be under observation for 15 minutes prior to the test. The record discloses no reason why a call on an available telephone during the observation period would impair the evidence gathering process, assuming the arrested person did not object to observation during the call. Nor is there evidence of the existence of what we referred to in *State v. Haynes*, 288 Or 59, 70, 602 P2d 272 (1979), as 'the practical necessities of custody' which might have justified deferring defendant's call to counsel. Moreover, in the absence of any such circumstances, *the absolute advice on the Oregon State Police form that '[a]ny request for a delay [to have a lawyer present] will constitute a refusal,' see n.1, supra, was not legally correct in this case.* In sum, this record provides no support for a holding that the police were authorized in the performance of their duties to restrict defendant's freedom by threatening adverse consequences if defendant telephoned counsel." (Emphasis supplied.) 291 Or at 808.

Here, between 30 and 45 minutes transpired from the time petitioner was taken to the police station and the time he was permitted to call his attorney. There is no evidence that any delay occasioned by a telephone call would have reduced the efficacy of the breathalyzer test. To the contrary, the officers were simply following a "rule" forbidding the arrestee to call his attorney prior to submitting to the test. The officer who requested that petitioner submit to the breathalyzer test testified:

"The phone call was made shortly after the refusal, yes, because we do allow that. After it is finally decided in our minds he is not going to take the test without making the phone call, at that point it's refusal and the phone call is allowed."

It follows that petitioner's requests to call his attorney did not amount to a refusal to take the breathalyzer test. Accordingly, the suspension order is set aside, and the judgment of the trial court is reversed.

Reversed.