Commonwealth *vs.* Donald Collins.

Bristol. September 4, 2003. - December 5, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Constitutional Law,* Waiver of constitutional rights, Self-incrimination, Assistance of counsel. *Practice, Criminal,* Assistance of counsel.

This court concluded that the rule in *Commonwealth* v. *Mavredakis,* 430 Mass. 848 (2000), did not require the suppression of evidence obtained from a suspect who made an informed waiver of his Miranda rights and spoke to the police, where the suspect had retained and consulted with counsel concerning the matter under investigation prior to his arrest and was informed of his right to have counsel present during the interview, but was not informed that several days prior to his arrest his attorney had told police that he (the attorney) wanted to be present during any interview with his client. [478-481]

Indictments found and returned in the Superior Court Department on December 13, 2000.

A motion to suppress was heard by *Elizabeth M. Fahey,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Steven E. Gagne,* Assistant District Attorney, for the Commonwealth.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

Cordy, J. In *Commonwealth* v. *Mavredakis,* 430 Mass. 848 (2000) (*Mavredakis*), we affirmed that the protections against self-incrimination afforded criminal defendants by art. 12 of the Massachusetts Declaration of Rights are greater than those embodied in the Fifth Amendment to the United States Constitution, and announced a rule, founded on those greater protections, that the police have a duty to inform a suspect under

custodial interrogation of an "attorney's efforts to contact him for purposes of providing legal advice." *Id.* at 849. We imposed that duty in order to "actualize the abstract right[]" to consult with an attorney prescribed by *Miranda* v. *Arizona*, 384 U.S. 436 (1966). *Mavredakis, supra* at 860. This rule was announced in the wake of *Moran* v. *Burbine*, 475 U.S. 412 (1986), in which the United States Supreme Court held that the Fifth Amendment did not require that police inform a suspect of an attorney's efforts to make contact with him because "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely . . . have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422.

In the present case, we must determine the reach of the *Mavredakis* rule, and, in particular, whether suppression is required where the suspect retained and consulted with counsel prior to his arrest, was informed of his right to have counsel present when he waived his Miranda rights and spoke to the police, but was not informed that several days prior to the arrest his attorney had told the police that he wanted to be present during any interview of his client. A judge in the Superior Court held that *Mavredakis* required the defendant to be informed of his attorney's statement to the police and suppressed the statements made during the interview. The Commonwealth's application for interlocutory appeal was granted by a single justice of this court and the appeal was entered in the Appeals Court. We transferred the case here on our own motion. Because we conclude that the concerns that underlie the *Mavredakis* rule are not present in the circumstances of this case, we reverse the allowance of the motion to suppress.

1. *Background.* We take the facts from the motion judge's findings and undisputed testimony presented at the hearing on the motion to suppress. *Commonwealth* v. *Hinds*, 437 Mass. 54, 55 (2002), cert. denied, 537 U.S. 1205 (2003). On November 22, 2000, the Seekonk police department began an investigation into allegations of sexual abuse against the defendant, Donald Collins. On November 27, Detective Russell Brennan of the Seekonk police department located Collins at his place of business in Providence, Rhode Island, and arranged to meet and interview him at 5 P.M. on November 28 at the Seekonk police

department. On November 28, Collins telephoned Brennan and postponed the meeting with him until the following day, November 29, so that he could "hire an attorney and speak to an attorney." On November 29, Attorney Mark Bond contacted Brennan, stated that he represented Collins, and wanted to be present at the interview later that day, but could not attend. Consequently, Bond rescheduled the interview for November 30. On November 30, Bond contacted Brennan and cancelled that interview as well. There is no evidence that the police had contact with Collins during this period of time, presumably leaving it to Bond to inform Collins as to the rescheduling of the planned interview.

After the November 30 interview was cancelled, Brennan applied for, and the Taunton District Court issued, a warrant for Collins's arrest. Brennan informed the Providence police department, which thereafter took Collins into custody. Collins agreed to rendition and, on December 1, Brennan and Investigator Thomas Carroll of the Bristol County district attorney's office brought Collins from the Adult Correctional Institution in Cranston, Rhode Island, to the Seekonk police department. On the way, Brennan and Carroll asked Collins identifying questions (name, date of birth, social security number), and advised him of his Miranda rights. Collins volunteered that "he had been in touch with a lawyer," was aware that a meeting had been scheduled at the Seekonk police station, and "was embarrassed by his lawyer's behavior" in not getting the interview arranged. He went on to say that he had nothing to hide and was willing to speak with them.

At the Seekonk police department, Brennan again advised Collins of his Miranda rights, and Collins signed a notification of rights form on which he also initialled each of the five enumerated rights. Collins reiterated that he was embarrassed by his attorney's actions in not getting an interview set up with the police, said he had nothing to hide, and proceeded to answer questions posed by Brennan and Carroll. Brennan never informed Collins of Bond's request of November 29 to be present at the interview.

Collins was subsequently indicted for forcible rape of a child under sixteen years, and indecent assault and battery on a child

under age fourteen years. Prior to trial, Collins moved to suppress the evidence obtained as a result of the December 1 interview. A hearing was held at which Brennan and Carroll testified. The judge found that "the interview of the defendant was polite, calm and non-threatening," that "Collins was always cooperative in answering . . . questions," that Collins "was not confused by any of the questioning," and that he never asked to speak with his attorney. She also found that Collins denied any sexual contact with the complainant.[1] However, she found that the police "failed to inform this defendant that his attorney wanted to be present for the interview," that there was "no showing that the defendant was aware of his attorney's desire to be present during questioning," or "that the attorney would not have appeared at the police station within a reasonable time were he informed that the defendant was in custody and would be interviewed." She concluded that "[b]ecause of the failure of the police to inform this defendant of a specific communication from his attorney that bears directly on this defendant's right to counsel, the defendant's statements must be suppressed."

2. *Discussion.* "The Commonwealth has the burden of establishing the validity of a Miranda waiver beyond a reasonable doubt." *Commonwealth* v. *Vao Sok*, 435 Mass. 743, 751 (2002). "To be valid the waiver must be made voluntarily, knowingly, and intelligently." *Commonwealth* v. *Edwards*, 420 Mass. 666, 670 (1995). In determining its validity, a court must analyze the "totality of the circumstances." *Commonwealth* v. *Jackson*, 432 Mass. 82, 85 (2000). Within this construct, *Mavredakis* established a "bright-line rule, providing that police must stop questioning and inform a suspect immediately of attempts of an attorney identifying himself or herself as counsel acting on the suspect's behalf to contact the suspect." *Commonwealth* v. *Beland*, 436 Mass. 273, 287 (2002). *Mavredakis, supra* at 861 ("duty to inform applies whether the attorney telephones or arrives at the station").[2] "The consequence of the failure so to inform a suspect is that any waiver of rights that has been given

---

[1]Although Collins denied sexual contact with the complainant, statements made during the interview were inculpatory in other respects.

[2]It long has been clear in Massachusetts, however, that the police have no inherent constitutional duty to inform a defendant's attorney that the defendant

becomes 'inoperative' for further admissions." *Id.* In essence, a suspect cannot make an informed waiver of his Miranda rights if he is kept ignorant by police of an attorney's attempts to provide him with assistance and advice. If the waiver is not informed, it is not valid.

The concerns underlying the rule are amply set forth in *Mavredakis*: "[T]here is an important difference between the abstract right to speak with an attorney mentioned in the Miranda warnings, and a concrete opportunity to meet 'with an identified attorney actually able to provide at least initial assistance and advice," *id.* at 859, quoting *State* v. *Haynes*, 288 Or. 59, 72 (1979), cert. denied, 446 U.S. 945 (1980); knowledge of an attorney's efforts to render assistance is necessary to actualize that abstract right at the time a suspect is faced with a decision whether to waive his constitutional rights; and "[a]ny other approach would lend tacit approval to affirmative police interference with the attorney-client relationship." *Mavredakis*, *supra* at 860.[3]

If, as here, a suspect volunteers that he has retained and consulted with an attorney regarding a police request to interview him, the conclusion that the suspect is fully cognizant of his right to consult with counsel is virtually inescapable. The Miranda warnings received prior to such an interview do not constitute "an abstract offer to call some unknown lawyer," *Commonwealth* v. *Sherman*, 389 Mass. 287, 291 (1983), quoting *State* v. *Haynes*, *supra*, but an invitation to contact the very lawyer that he has retained to represent him in the matter.

Additionally, this is not a case in which a lawyer has been denied access to a client in custody or under interrogation. See *Mavredakis*, *supra* at 861-862 (police policy of forbidding

has been arrested or even that the defendant, already arrested, will be interrogated. See, e.g., *Commonwealth* v. *Sherman*, 389 Mass. 287, 291 (1983); *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978); *Commonwealth* v. *Andujar*, 7 Mass. App. Ct. 777, 783 (1979). See also *Commonwealth* v. *Mandeville*, 386 Mass. 393, 401 (1982). While our law requires the police to facilitate the attempts of those in custody to contact their attorneys, the police need not make the telephone calls themselves. See G. L. c. 276, § 33A.

[3]The rule was not intended to alter the principle that "responsibility for invoking the protections guaranteed by *Miranda* v. *Arizona*, [384 U.S. 436 (1966)], and art. 12 rests squarely in the hands of criminal defendants." *Commonwealth* v. *Beland*, 436 Mass. 273, 288 (2002).

contact between third parties and persons being interviewed violates art. 12 if applied to attorneys attempting to contact their clients). Nor is it a case in which a suspect under interrogation, or about to be interrogated, has been kept unaware that a lawyer, purporting to act on his behalf, is attempting to render advice and assistance. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975), cert. denied, 425 U.S. 959 (1976) (waiver not voluntary where injured suspect not notified of calls made by attorney to police on learning that client was to be interviewed at hospital); *Commonwealth* v. *McKenna*, 355 Mass. 313, 325 (1969) (same where suspect not notified of telephone call made by his attorney to police during interview).[4]

Collins argues, however, that his statements should be suppressed because the circumstances in which they were made are closely akin to those present in *Commonwealth* v. *Sherman, supra.* In the *Sherman* case, an attorney, who had been appointed to represent the defendant on a pending criminal charge, learned that the police intended to question him concerning unrelated crimes, and informed the police that she wished to be present at the questioning. When the police picked the defendant up a few hours later, they failed to inform the defendant of the attorney's request. We held the defendant's waiver of his Miranda rights at that questioning to be invalid because he was kept ignorant of the attorney's request and therefore did not know that there was "an identified attorney actually available to provide at least initial assistance and advice." *Id.* at 291, quoting *State* v. *Haynes, supra.* Importantly, there was no evidence that the defendant had consulted the attorney about the case under investigation, or was even aware that the attorney was willing or available to advise him on that matter.

Where, as here, a suspect has retained and consulted with an attorney concerning the matter under investigation, it cannot be said that the right to consult with counsel is "abstract"; and where the police have done nothing to impede the contact or the flow of information or advice between lawyer and client (includ-

---

[4]While the decisions in these cases preceded *Moran* v. *Burbine*, 475 U.S. 412 (1986), and appear to be founded more on Federal constitutional rights than art. 12, we concluded in *Mavredakis, supra,* that they survived *Moran* v. *Burbine, supra,* and were still good law under art. 12.

ing, e.g., failing to notify the defendant of attempts by the lawyer to contact him), our concerns regarding interference with the attorney-client relationship are simply not present. In these circumstances, the rule does not apply, and to extend it would unduly burden law enforcement with responsibilities that firmly belong with attorneys and defendants.

The judge's allowance of the motion to suppress on the ground that the *Mavredakis* rule was violated by the police is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.[5]

*So ordered.*

---

[5]In his initial motion to suppress, the defendant also argued that the police continued to question him after he requested that the interview end and invoked his right to have an attorney present. The Superior Court granted the defendant's motion on the *Mavredakis*-based argument, and therefore did not rule on this alternate ground. Based on her findings of fact that were to the contrary, the claim is without merit.