Joseph Jaspan, J.
The defendant is charged with grand larceny in the second degree (Penal Law, § 155.35) and deliberate concealment of a material fact by a welfare recipient (Social Services Law, § 145, subd 1) in that he failed to inform representatives of the Suffolk County Department of Social Services that while a recipient of public assistance he had received income from other sources. He now moves to suppress two statements given by him to special investigators of that department which tend to support the charges against him.
While the defendant grounds his position upon the stipulated fact that he was not given his Miranda warnings, the real issue is whether the admissions were voluntarily given.
In April of 1975 the defendant was receiving public assistance under an Aid to Dependent Children program financed jointly by the Federal, State and county governments (Social Services Law, art 5, tit 10). In order to secure this aid the defendant was obliged to file an application with the Department of Social Services to establish his eligibility (18 NYCRR 350.1) and was further required to file applications for reclassification as to eligibility no less frequently than once in six months (18 NYCRR 350.2, 351.21). The applicant was informed that he was required to notify the local department immediately of all changes in circumstances and that he was subject to investigation, and to "face-to-face” interviews on the issue of his eligibility and could be required to substantiate both categorical and financial eligibility (18 NYCRR 351.21 [d]).
When a social services district receives indication of ineligibility or of change in degree of need, action must be taken to promptly review those situations as they occur and if the applicant fails to attend the interview and give the necessary information his case must be closed and the public assistance terminates.
In April, 1975 the Department of Social Services had reason to believe that the defendant had unreported supplemental *53 sources of income and on April 22, 1975 a special investigator went to his home in Coram to inquire with respect thereto. The defendant was not at home but a message was left that he should report to the department. On May 1, 1975 the defendant went to the local social services office and was interviewed by a special investigator and during the course thereof admitted that he had purchased an Oldsmobile for which he put down a $1,000 deposit and agreed to pay the balance at $237 per month for 24 months. The unpaid balance was advanced by a bank upon a written application which the defendant now indicates was false. In any event the defendant was unable to explain the source of the funds used to pay for the car. He signed a statement admitting the purchase. The public assistance was not terminated.
Some months later the defendant was again asked to come to the department office in connection with a special investigation procedure. He complied on September 11, 1975 and was questioned with respect to purchases from Greenfield Nurseries for home improvements for which he paid more than $2,000.
The defendant again made and signed a statement and acknowledged the purchase but provided no information as to the source of the funds.
The investigations were conducted in a small room in the social services building by special investigators who were not peace officers and lacked the power of arrest. The investigations were not routine but triggered by information obtained by the department. The defendant was advised that his public assistance might be terminated if he did not co-operate and if he did not file and sign reclassification forms.
The defendant was not in custody or in a custodial atmosphere during either of the interviews.
The question presented is whether the admissions and written statements given by the defendant as an alternative to the loss of the assistance should be suppressed as the products of impermissible coercion and incidentally because he was not given the Miranda warnings.
Miranda Warnings
The defendant was not in custody or otherwise deprived of his freedom; nor was he in a custodial atmosphere at the time of the interviews which resulted in the statements under review. Defendant nevertheless urges that unless he was given *54 his Miranda warnings the admissions made by him must be suppressed.
The apparent limitations to custodial inquiries in Miranda v Arizona (384 US 436) was the subject of a recent review by the Supreme Court of the United States in Beckwith v United States (425 US 341). In Beckwith a special agent of the Internal Revenue Service investigating potential criminal income tax violations obtained admissions without first giving the defendant a full set of warnings as to his rights. The court held (p 347) that the Miranda rule applied only when "questioning [was] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” (Miranda v Arizona, 384 US 436, 444.)
This ruling is dispositive of the Miranda issue. However, the court added that: "non-custodial interrogation might * * * by virtue of some special circumstances * * * 'overbear petitioner’s will to resist and bring about confessions not fully self-determined’, Rogers v. Richmond, 365 U. S. 534, 544. When such a claim is raised, it is the duty of [a court] to examine the entire record and make an independent determination of the ultimate issue of voluntariness.’ ”
The Voluntariness of the Admission
The defendant claims, at least inferentially, that since he would lose his public assistance if he failed to answer the questions relating to his resources constituted coercion overbearing his will to resist and brought about admissions not fully self-determined.
In Lynumn v Illinois (372 US 528) the defendant confessed unlawful possession of marijuana after she was told by police officers who encircled her in her apartment that State financial aid for her children would be cut off and her children taken from her, if she did not co-operate.
The court held that the totality of the circumstances must be deemed to have combined to produce an impellingly coercive effect upon the defendant at the time she made her admissions.
Lynumn is not dispositive of the issues in this case even though the defendant was under some compulsion to appear and to answer the questions posed to him. But this compulsion did not violate traditional tests of voluntariness.
Grants of public assistance are subject to the continuing *55 condition that the recipient be categorically and financially eligible at the time of each successive payment. Public policy dictates literal application of the regulations requiring immediate notice in any change of income or resources.
Inherent in these regulations is the right of the Department of Social Services to require a recipient to answer upon demand questions relative to eligibility. In the truest sense, no penalty is associated with a refusal to comply. Rather, there is an abandonment of any claim to the public assistance when the applicant no longer is willing to attest to or recertify his eligibility. The requirements of public policy dictate a vigilance in this area and justify the regulations authorized by statute (Social Services Law, § 20, subd 3, par [d]), which place burdens of proof of eligibility upon the applicant. The alternative would be fiscal and administrative chaos eroding the ability of State and local government to provide other essential services.
The defendant expresses the compulsion upon him in terms of loss of his grants with the ADC program and actually there is no loss in the absence of proof of eligibility.
The threat in Lynumn was a loss of public assistance for reasons extraneous to categorical or financial eligibility. Only when eligibility remains in effect can a grant be "cut off”. When eligibility does not exist, the applicant cannot suffer such a loss.
Accordingly I find that the defendant faced with the dilemma of re-establishing his eligibility or abandoning his right to public assistance chose to make an attempt to assert eligibility. This choice may ultimately be disadvantageous to him in this criminal proceeding but his admissions were not the product of governmental compulsion in violation of his constitutional rights.
The motion to suppress the admissions referred to above is denied.