Argued and submitted August 25, reversed and
remanded for new trial October 13, 1980

# STATE OF OREGON,
*Respondent,*

*v.*

# DENNIS O'KEEFE,
*Appellant.*

## (No. 78-71C, CA 16846)

617 P2d 938

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney General, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The defendant appeals from a conviction for theft in the first degree, ORS 164.055. The conviction was based on the defendant's receipt of welfare benefits to which he was not entitled. He contends that the trial court erred both in denying his motion to suppress a statement he made to a fraud investigator for the Adult and Family Services Division (AFSD) and in admitting evidence of defendant's "other crimes" or bad acts. We agree with the latter contention, and reverse.

Beginning in April, 1977, the defendant and his family were entitled to and receiving welfare benefits of $408 per month. In May of that year, the defendant reported to his case-worker that the monthly check had not been received. He then signed an affidavit stating that the check had been lost, destroyed or stolen. The AFSD placed a stop payment order on the check and issued the defendant two new checks totalling $408 for the month of May. The check for June arrived on the normal date. Shortly after June 1, the defendant and his wife separated and the defendant was removed from the welfare rolls. Thereafter, in early July, the defendant testified that he received another check which he cashed. This check, dated May 1, 1977, was the original check for May. It is the cashing of this check which led to the present charge.

We turn first to defendant's Fifth Amendment claim. In January, 1978, the defendant received a letter from an investigator for AFSD. He was asked to appear at a stated time to discuss an alleged overpayment of public assistance made to him. The letter stated that, if he chose not to keep the appointment, the investigation would continue and might result in legal action without any additional notice to him.

The defendant appeared for the interview at the stated time. Initially, he was shown the investigator's badge and identification and was told by the investigator that he was not under arrest or in custody and was free to leave at any time. The defendant

signed a written statement to this effect. He admitted that the signature on the original May check was his but claimed, at that time, not to recall cashing it. The investigator did not tell the defendant that his statement could be used against him in court until after the matter had been discussed and the defendant had signed a statement, written by the investigator, containing defendant's version of the incident. The defendant claims that his statement should have been suppressed because it was not made voluntarily with full knowledge of his rights.

■        An individual is entitled to be given *Miranda* warnings only after he "has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed2d 694 (1966).

> "The test of whether a defendant was in custody for purposes of *Miranda* is an objective test. The relevant factors are: (1) whether the defendant could have left the scene of the interrogation voluntarily, (2) whether he was being questioned as a suspect or merely a witness, and (3) whether the defendant freely and voluntarily accompanied the police to the place of questioning." *State v. Campbell,* 43 Or App 979, 982, 607 P2d 745 (1979); *see also State v. Paz,* 31 Or App 851, 859-860, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

■ ■        In this case it is clear that the defendant could have left the interview at any time. Although the defendant testified that he felt he had no choice but to stay because of the threat of court action, the test is not solely whether the defendant believed he was in custody but how a reasonable person would perceive the situation. *State v. Paz, supra,* 31 Or App at 858-859. It is also clear that defendant came to the investigator's office voluntarily at the request of the investigator. *See Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed2d 714 (1977). Therefore, even assuming that the defendant was a suspect and that the investigator's actions were sufficiently similar to police action to bring the exclusionary rule into effect under appropriate circumstances, we conclude that the

defendant here was not "in custody" for purposes of *Miranda. See State v. Lowry,* 37 Or App 641, 588 P2d 623 (1979), *rev den* 285 Or 195 (1979). The motion to suppress his statement was properly denied.

We turn now to defendant's second claim of error. During the trial, a "confession of judgment" for $1166, in favor of the State Welfare Division and signed by the defendant, was introduced into evidence. In the judgment, dated January 18, 1977, the defendant admitted receiving food stamps during a period for which he was ineligible. The "confession" further stated that, with full knowledge of the rules and regulations, defendant had failed to report to his caseworker the fact that he owned property in Portland at the time he was receiving the food stamps. Testimony from an investigator for AFSD concerning this judgment was also received into evidence.

■　　　Generally, evidence of other crimes or bad acts is not admissible if the purpose of that evidence is to prove that the defendant acted on the occasion charged as he has on prior occasions, that the defendant has the propensity to commit criminal acts, or that he committed the crime charged because he is a person of bad character. *State v. Sicks,* 33 Or App 435, 438, 576 P2d 834 (1978); *State v. Pitts,* 29 Or App 59, 61, 562 P2d 562, 30 Or App 1, 566 P2d 182 (1977); *State v. Hockings,* 29 Or App 139, 145, 562 P2d 587 (1977), *rev den* 279 Or 301 (1977), US *cert den* 434 US 1049 (1978). The rationale for excluding such evidence was stated in *State v. Manrique,* 271 Or 201, 205-206, 531 P2d 239 (1975):

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, *i.e.,* have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. * * * It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice * * *.
>
> "For this reason it is the general rule in criminal cases that the state may not offer evidence that the

defendant was guilty of other crimes in addition to the crime for which he is charged. Although evidence that a defendant has committed other crimes may have some probative value in that it may be 'more likely' that such a person committed the crime in question, it is generally recognized that the danger of unfair prejudice to the defendant outweighs any such probative value. * * * This is consistent with the general rule that evidence of other similar acts or transactions, including other acts of negligence, other contracts and other fraudulent representations, is not admissible to prove that on a subsequent occasion the same person engaged in a similar act or transaction * * *."

Several exceptions to this general rule of exclusion have developed. Among these exceptions are cases in which the evidence of other acts is offered to establish motive, intent, the existence of a common plan or scheme, the lack of inadvertance, or where a complete account of the crime charged is otherwise impossible. Each of these exceptions, however, involves cases in which the probative value of the evidence has been found, explicitly or implicitly, to outweigh the possibility that prejudice to the defendant will result from the admission of the evidence. *State v. Manrique, supra,* 271 Or at 207; *State v. Goss,* 33 Or App 507, 511, 577 P2d 78 (1978); *State v. Pitts, supra,* 29 Or App at 62 and n 1.

In this case, the state argues that the "confession of judgment" was offered to prove defendant's criminal knowledge or intent or lack of inadvertance. We disagree. Evidence of similar acts is not admissible to prove intent simply because the defendant has pled not guilty. *State v. Sicks, supra,* 33 Or App at 438. Further, evidence that the defendant once deliberately defrauded the welfare department is of little probative value with respect to his particular claim of mistake in this instance. The two incidents involve completely different factual situations. Neither does the evidence indicate the existence of any common plan or scheme, as the trial court found. Evidence of the judgment was relevant only to show that the defendant had once

engaged in welfare fraud and thus was possibly more likely to have deliberately defrauded AFSD in this instance. The introduction of the confession of judgment was prejudical; the defendant's conviction cannot stand. *State v. Pitts, supra,* 29 Or App at 65-66; *State v. Henley,* 27 Or App 607, 612, 557 P2d 33 (1977) *rev den* 277 Or 237 (1977).

Reversed and remanded for new trial.