Submitted on record and briefs September 30, 1981,
affirmed April 5, 1982

In the Matter of Daniel Myron
Sanders, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY,
*Respondent,*

*v.*

SANDERS,
*Appellant.*

(No. 79-165, CA A20655)

643 P2d 384

Peter F. M. Warburg, Eugene, filed the brief for appellant.

J. Pat Horton, District Attorney, and Jonathan H. Fussner, Assistant District Attorney, Eugene, filed the brief for respondent.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

## YOUNG, J.

Appellant, a 13-year old child, appeals from an order finding him to be within the jurisdiction of the circuit court. The order was based on stipulated facts after the denial of a motion to suppress certain statements made by appellant. Appellant argues that the statements he made to police officers before and after he was advised of his *Miranda*[1] rights should be suppressed. We review *de novo,* ORS 419.561(4), and affirm.

The statements in question were made during three distinct time periods and under different circumstances, and each requires separate analysis. Appellant contends: (1) the statements made prior to the advice of his *Miranda* rights were the result of custodial interrogation; (2) statements made after the *Miranda* rights advice was given were not made pursuant to a knowing, intelligent and voluntary waiver of those rights; and (3) while in detention he could not waive his rights in the absence of his attorney, or, at the least, he should have been given the opportunity first to consult with his attorney before being asked to waive them.

The facts are not seriously disputed. At approximately 3:00 a.m. in a downtown area of Eugene, an officer observed three juveniles riding bicycles. The officer attempted to stop the juveniles, but they abandoned the bicycles, fled on foot and eluded the officer. A second officer saw a juvenile, who was later determined to be the appellant, run from an alley. The officer followed and came upon him hiding in bushes. The officer frisked him and asked why he had run from the other officer. Appellant stated "I didn't want to get caught for curfew." He was also asked why he and his companions abandoned the bicycles. He did not answer. Acting solely upon a hunch, the officer made the statement that the bicycles were stolen and they needed to be returned to their owners. Appellant made no comment. The officer then asked if the bicycles had been taken from a garage or a bike rack. Appellant replied, "We got them at the mall." At that point the officer read to appellant his *Miranda* rights. He acknowledged that he

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

understood all rights and that he had heard them before. Five to ten minutes elapsed from the time of the officer's initial contact until the reading of the rights.[2]

After appellant had been advised of his rights, the officer continued to question him. He admitted that he had taken one of the bicycles from a house in the neighborhood. Because of the late hour and the activities described, the officer asked if he or his companions had taken anything else from a house or building in the neighborhood. Appellant did not answer. The officer pressed the matter by telling him that the police would eventually find out and it would be better to clear the matter up. Appellant told the officer that he and his companions had broken a window to gain entry to a building where they had taken some tools. He went with the officer to point out the building and its broken window. Roughly 10 to 15 minutes had elapsed from advising appellant of his rights until learning the location of the building. Appellant was then placed in detention.

Appellant appeared in court with his attorney and denied the allegations of the petition charging him with burglary in the first degree. ORS 164.225. Two days after the court appearance, and while appellant was still in detention, two officers questioned him regarding the location of the stolen tools. One officer testified that he did not know that appellant was represented by an attorney. Before the questioning began, the officers told him that they were trying to return the tools to their owner, a mechanic, so he could go back to work and that it would be helpful with respect to being required to make restitution. The officer then read appellant his *Miranda* rights. He again stated that he understood them. In the course of the interrogation that followed, appellant told the officers where he hid the tools and drew a rough map of the area to assist the officers in locating them.

■     Under the first assignment appellant argues that once he was found and frisked for weapons, he was in custody and that anything he said prior to being advised of

---

[2] The questioning took place in an area described by the officer to be like a "back yard." The police car headlights were on but not the overhead lights. While appellant was being questioned in the back yard, two other officers were questioning two other juveniles standing 20 to 25 feet away. All officers were in uniform.

his *Miranda* rights was the result of custodial interrogation. *State v. Crossen,* 10 Or App 442, 449, 499 P2d 1357, *rev den* (1972). To determine whether a defendant was "in custody" for the purposes of *Miranda,* we look to the circumstances surrounding the interrogation. In *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978), we considered three factors that were relevant to that determination, two of which have relevance here: (1) whether defendant could have left the scene voluntarily, and (2) whether defendant was questioned as a suspect or as a witness. *State v. O'Keefe,* 48 Or App 755, 758, 617 P2d 938 (1980).

■■ The officer had sufficient reason to stop appellant and make a reasonable inquiry.[3] He had run from and eluded the first officer, the bicycles were abandoned, and it was after curfew.[4] *See State v. Morris,* 56 Or App 97, 641 P2d 77 (1982). There was no evidence that appellant was physically restrained or that he was told that he was in

---

[3] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

[4] ORS 419.710 provides:

"No minor shall be in or upon any street, highway, park, alley or other public place between the hours of 12 midnight and 4 a.m. of the following morning, unless:

"(1) Such minor is accompanied by a parent, guardian or other person 18 years of age or over and authorized by the parent or by law to have care and custody of the minor;

"(2) Such minor is then engaged in a lawful pursuit or activity which requires his presence in such public places during the hours specified in this section; or

"(3) The minor is emancipated pursuant to ORS 109.550 to 109.565."

ORS 419.760 provides:

"Any minor who violates ORS 419.710 or an ordinance established under ORS 419.750 may be taken into custody as provided in ORS 419.569 and may be subjected to further proceedings as provided in ORS 419.472 to 419.597, 419.800 to 419.840 and subsection (2) of 419.990."

custody or under arrest. The evidence does not reflect that there was a "coercive environment." *State v. Mitchell,* 35 Or App 809, 817, 583 P2d 14, *rev den* 285 Or 73 (1979). When the officer initiated the questioning, he had no probable cause to believe that the bicycles had been stolen or that a building had been burglarized. He was entitled to make a reasonable factual inquiry concerning appellant's activities and had a duty to do so. *State v. Taylor,* 249 Or 268, 437 P2d 853 (1968). It was only when appellant told the officer, "We got [the bicycles] at the mall" that there was probable cause to believe that a theft had occurred.[5] At that point questioning stopped, and appellant was read his *Miranda* rights.

■    Appellant next contends that the statements he made after he was advised of his *Miranda* rights should also be suppressed, because they were not made pursuant to a knowing, intelligent and voluntary waiver of his Fifth and Sixth Amendment rights. Specifically, he argues that a boy of 13 years, with an intelligence quotient of 84, is not capable of making an intelligent and knowing waiver.[6]

■ ■    The prosecution has the burden to show a waiver of the constitutional protections. *State v. McGrew,* 38 Or App 493, 590 P2d 755, *rev den* 286 Or 149, *cert den* 444 US 867 (1979). In *State v. Gullings,* 244 Or 173, 416 P2d 311 (1966), the court addressed the issue of waiver:

> "It can not be said that a juvenile cannot waive his constitutional rights as a matter of law. It may be more difficult to prove, because of his age, but it is a factual matter to be decided by the trial judge in each case." 244 Or at 182.

Similarly, a person's intelligence must be considered in determining if due process requirements have been fulfilled. In *McWilliams v. Gladden,* 242 Or 333, 407 P2d 833 (1966), the court stated:

> "* * * [I]n considering the question of waiver by a defendant in a criminal case the legal principles which

---

[5] When appellant told the officer that the bicycles were taken from the mall, that statement, although inculpatory, was not a confession that the bicycles had been stolen by appellant.

[6] While in detention the child was given an I.Q. test by a psychologist. His scores were as follows: verbal scale 71; performance scale 101; full scale 84. The psychologist indicated that the difference between the verbal and performance scores demonstrate that the child is culturally and educationally deprived and that he is somewhat "nonverbal."

must guide the trial court are as follows: (1) the individual waiving his rights must have the mental capacity to understand fully the nature of the right he is waiving, and (2) his choice must be free of oppressive tactics to induce that choice." 242 Or at 344.

The determination of waiver depends upon the particular facts and circumstances of the case. The record discloses that appellant has poor verbal skills and a limited fund of knowledge. However, when testifying on his own behalf, he answered unambiguously that he understood his rights. He had responded affirmatively to the officer, "I've heard them before, I understand." Furthermore, there is no evidence that the child was threatened, physically intimidated or coerced into waiving his rights. The trial judge observed appellant's demeanor, personality and intelligence. There was sufficient evidence to support the trial court's findings, and on the basis of our review of the record, we agree that the state met its burden to prove "an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst,* 304 US 458, 58 S Ct 1019, 51 L Ed 2d 424 (1938).

Appellant's final contention is that his statements to the officers while he was in detention without the presence of his attorney should have been suppressed. He argues that any waiver at that point in the proceeding should have been made with his attorney present, or at the least after he had had an opportunity to consult with his attorney.

Appellant had an attorney. The attorney had appeared with him at the original hearing two days before the police initiated the questioning. One officer testified that he did not know that appellant was represented by an attorney. Neither officer made an effort to ascertain whether he was represented by counsel. Appellant was told that his cooperation in locating the stolen tools would be helpful. Once again he was read his *Miranda* rights and acknowledged that he understood them. He then told the officers where they could find the tools. *Miranda* warnings apprise a defendant of his Fifth Amendment right to remain silent and his Sixth Amendment right to have an attorney present during questioning. There has been confusion with respect to the relationship between the *Miranda*

rights and the right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments as articulated in *Massiah v. U.S.,* 377 US 201, 84 S Ct 1199, 12 L Ed 2d 246 (1964). In *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977), the court reaffirmed *Massiah* and made it clear that the right to the assistance of counsel is distinct from the rights guaranteed by *Miranda.* The rule of *Massiah,* as clarified by *Williams,* is that a defendant is entitled to the assistance of counsel at or after the time criminal proceedings have been instituted against him. *Brewer v. Williams, supra,* 430 US at 398. The right does not depend upon the defendant's request for counsel. *Brewer v. Williams, supra,* 430 US at 404.

■ Judicial proceedings had been initiated before the police questioned appellant in detention. He had been placed in custody, had appeared at a hearing with his appointed attorney and had denied the burglary charges. There is no doubt that the officers' intent in questioning him was to obtain incriminating statements. He was entitled to the assistance of his attorney during the questioning. The issue to be resolved is whether the appellant adequately and sufficiently waived his right to the assistance of counsel.

Appellant argues that the correct rule, which is applied in New York and a minority of other jurisdictions, requires that "once an attorney enters the proceedings, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel." *People v. Hobson,* 39 NY2d 479, 483, 348 NE2d 894, 384 NYS2d 419 (1976); *People v. DiBiasi,* 7 NY2d 544, 166 NE2d 825, 200 NYS2d 21 (1960). The Oregon Supreme Court has consistently rejected the adoption of that rule. *State v. Haynes,* 288 Or 59, 602 P2d 272, *cert den* 446 US 945 (1979); *State v. Sanford,* 245 Or 397, 421 P2d 988 (1966); *State v. Atherton,* 242 Or 621, 410 P2d 208 (1966). In those cases the court affirmed the admission in evidence of otherwise voluntary statements made by a suspect in custody, after proper warnings, in the absence of counsel whom the suspect was known to have retained. Those cases, however, were limited to arrested persons "not yet indicted or formally charged." *State v. Haynes, supra,* 288 Or at 70;

*State v. Atherton, supra,* 242 Or at 628; *see also, State v. Singleton,* 288 Or 89, 100, 602 P2d 1059 (1979).

In the instant case, appellant, in the absence of counsel, was asked to waive counsel and answer questions after a judicial proceeding had formally begun. That was the case in *Brewer v. Williams, supra,* where the court held that under those circumstances, a defendant can, without *notice* to counsel, waive his rights under the Sixth and Fourteenth Amendments. 430 US at 405-06.[7] If we apply the stringent waiver standard formulated in *Johnson v. Zerbst, supra,* to the waiver of the assistance of counsel, there is little danger of undercutting the principle established in *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 L Ed 158 (1932), where the Supreme Court stated:

> "* * * [D]uring perhaps the most critical period of the proceedings * * * that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation [are] vitally important, the defendants * * * [are] as much entitled to such aid [of counsel] during that period as at the trial itself." 287 US at 57.

The question remains whether the state proved "an intentional relinquishment or abandonment of a known right or a privilege." *Johnson v. Zerbst, supra,* 304 US at 464. The question of waiver requires application of constitutional principles to the facts as found. *State v. Singleton, supra,* 288 Or at 104. We find that the record falls short of sustaining the state's burden of proving an intelligent and knowing waiver.

As we noted earlier, appellant is below normal intelligence. When testifying, he appeared to understand what the right to have an attorney meant. He had some difficulty verbally identifying who the attorney was that represented him. Two days before the officers questioned him in detention, he had appeared in court with his appointed counsel. The officer's recitation of the litany of *Miranda* included the right to counsel. Confusion could understandably result from the apparent contradiction of the officer's statements that appellant was entitled to an

---

[7] The rule is assumed, albeit in dictum, in *State v. Quinn,* 290 Or 383, 398, 623 P2d 630 (1981); and *State v. Gholston,* 44 Or App 113, 118, 605 P2d 309 (1980).

attorney, when he had had an attorney with him in court two days earlier. There was no evidence that appellant understood that he could have his attorney present during the questioning. The record shows that the officer simply read from the standard *Miranda* card, obtained appellant's response that he understood and started talking about the benefits of restitution. There was no evidence that the appellant had a clear understanding of the specific immediate right to the assistance of his attorney. The concept of waiver assumes some knowledge of what is being waived. We are not persuaded that the state carried its burden to show a knowing and intelligent waiver of appellant's rights under the Sixth and Fourteenth Amendments.[8]

Having decided that the admission in evidence of the statements made by appellant while he was in detention was error, we find nonetheless that the error was harmless. The error complained of concerns a right protected by the federal Constitution. Therefore, the standard to determine if it was harmless error is the federal standard. *State v. Stilling,* 285 Or 293, 304, 590 P2d 1223, *cert den* 444 US 880 (1979). It is stated in *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967), that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonble doubt." On review of the entire record, we find that the confession made prior to detention renders appellant's admissions while in custody harmless beyond a reasonable doubt.

Affirmed.

---

[8] In *Edwards v. Arizona,* 451 US 477, 68 L Ed 2d 378, 101 S Ct 1880 (1981) the Supreme Court held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation. The facts in *Edwards* are distinguishable but it is arguable that its rationale may apply here. We decline to discuss *Edwards* however, as it was neither briefed nor argued.