STATE OF NEBRASKA, APPELLEE, V. LAURA L. BARNES, APPELLANT.
434 N.W.2d 516

Filed January 20, 1989.   No. 88-119.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Royce N. Harper for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and FUHRMAN and WHITEHEAD, D. JJ.

HASTINGS, C.J.

Following a trial by jury, the defendant was found guilty of obtaining, by means of a willfully false statement, representation, or other device, a benefit administered by the Department of Social Services (DSS); i.e., a payment to which she was not entitled, or a larger payment than that to which she was entitled, in excess of $500. She was sentenced to probation for 5 years and ordered to pay restitution in the amount of $3,635.28.

On appeal, defendant assigns as error that the trial court improperly admitted statements made by the defendant after having overruled her motion to suppress.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Texel, ante* p. 810, 433 N.W.2d 541 (1989); *State v. Marco, ante* p. 355, 432 N.W.2d 1 (1988).

In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding

such motion to suppress. *Texel, supra.*

The defendant received Aid to Dependent Children (ADC) from November of 1984 through December of 1986. When she initially applied for ADC, she received information about her rights and responsibilities. One of her responsibilities was to report any change in employment status. The defendant's case was reviewed on July 17, 1985, and July 16, 1986, to determine her continuing eligibility. During both of those interviews, Frankie Jean Williams, the defendant's caseworker, orally reviewed with defendant her rights and responsibilities, including the responsibility to report any change in employment status. During those interviews, the defendant did not tell Williams that she was working.

In December of 1986, DSS became aware that the defendant had received income that she had not reported, from working at the Viking Ship from July 1985 to August 1986. In April of 1987, welfare fraud investigator Ron Heath was assigned to defendant's case to determine whether an overpayment of benefits had been made. Using information supplied by the Viking Ship, Heath determined that an overpayment in the amount of $3,635.28 had been made to the defendant during the period from June 15, 1985, to August 31, 1986.

On June 12, 1987, Heath sent the defendant a letter requesting that she contact him for an appointment to discuss an overpayment of ADC funds. The letter stated, "I'm sure you understand that this is a very serious matter which should be resolved as soon as possible." The letter also stated, "It would be to your advantage to give this matter your immediate attention." After receiving the letter, the defendant phoned Heath to set up an appointment. According to the defendant, during the phone conversation Heath said it would be in her best interest to come and talk to him. Heath admitted that it is possible he told her that it would be to her advantage to talk to him.

On June 23, 1987, the defendant voluntarily met with Heath. The meeting took place at the Omaha office of DSS, in a separate interview room, with the door closed and only Heath and the defendant present. The defendant was advised that she was not in custody, that she was free to leave at any time, and

that Heath had no arrest power. Furthermore, Heath informed her that there were three possible outcomes of her case—criminal prosecution, civil action, or just repayment, but he would not be making the decision of what action would be taken against her. Heath then read the "Warning and Waiver of Rights" form to the defendant, gave her an opportunity to read it for herself, and witnessed her signing the form.

After she signed the form, Heath conducted an interview, during which the defendant admitted she had made false statements or failed to report employment although she was required to do so. The defendant's motion to suppress her admissions was overruled.

Defendant argues first that *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), protects an individual from police "custodial interrogation" in the absence of appropriate warnings. Of course, this point is beyond debate.

The courts of other states that have dealt with the issue have held that *Miranda* warnings are not required when a welfare recipient is questioned by welfare fraud investigators. See, *State v. Bruske*, 288 N.W.2d 319 (S.D. 1980); *State v. O'Keefe*, 48 Or. App. 755, 617 P.2d 938 (1980); *People v. Rosen*, 89 Misc. 2d 51, 390 N.Y.S.2d 578 (1977); *Doe v. Chang*, 58 Haw. 94, 564 P.2d 1271 (1977); *People v. Parada*, 188 Colo. 230, 533 P.2d 1121 (1975); *State v. Graves*, 60 N.J. 441, 291 A.2d 2 (1972); *People v. Legerretta*, 8 Cal. App. 3d 928, 87 Cal. Rptr. 587 (1970). The courts in those cases reasoned that no warnings were required since the welfare recipient was not in custody, under any type of restraint, or in a coercive environment.

Nebraska has not dealt with this issue. However, it is unnecessary for us to do so, because in this case the requirements of *Miranda* were met. Heath did inform the defendant of her constitutional rights. The "Warning and Waiver of Rights" form Heath read to the defendant states:

- You have a right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

• If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

• If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

This court has said:

Before a defendant's custodial statement is admissible as evidence, the absolute and indispensable prerequisites of the *Miranda* warning must have been satisfied preceding the interrogation producing such statement, namely, law enforcement personnel must (1) inform the defendant of the right to remain silent, (2) explain that anything said can and will be used against the defendant in court, and (3) inform the defendant of the right to consult with a lawyer, retained or court-appointed, and to have a lawyer present during interrogation.

*State v. Gibson*, 228 Neb. 455, 459, 422 N.W.2d 570, 573 (1988). The warning given by Heath contained the requisite elements of a sufficient *Miranda* warning.

After reading the form to the defendant, Heath gave it to her to read for herself. He felt that she understood what she had read. She then signed the waiver portion of the "Warning and Waiver of Rights" form, which stated as follows:

I have read this statement of my rights (This statement of my rights has been read to me) and I understand what my rights are. I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

It is therefore reasonable to infer that defendant understood her rights and voluntarily waived them.

The trial court found that Heath's statements in the letter that "[i]t would be to your advantage to give this matter your immediate attention" and over the phone that it would be in the defendant's best interest to discuss this matter with him did not constitute inducements or promises to the defendant such as to render her admissions involuntary. This court is bound to

uphold that finding unless it is clearly erroneous. It is not.

The defendant also claims that her admissions were involuntary because Heath told her that restitution is usually all that is required.

However, Heath testified that at the beginning of the interview at the DSS offices, before he read the "Warning and Waiver of Rights" form to the defendant, and before she had made any admissions, he informed the defendant that there were three possible outcomes for her case—criminal prosecution, civil action, or restitution. He also specifically told her that he would not be making the decision about what action would be taken against her. This information was sufficient to dispel any belief the defendant may have had that leniency would result if she talked to Heath.

As for Heath telling the defendant during the interview that restitution is the usual practice, during the suppression hearing he testified that it was toward the end of the interview, after the defendant made her admissions, that he discussed restitution as the usual practice in cases such as hers.

The record does not permit this court to say that the trial court's finding that no promises were made is clearly erroneous. The judgment of the district court is affirmed.

AFFIRMED.